REYNOLDS *v.* NEAL *et al.*, executors, and *vice versa*.

1. When an appeal is pending in the superior court from a judgment rendered by a justice of the peace, the summons is amendable in matters of substance as well as matters of form, provided there is enough to amend by. There was enough to amend by in this case, and the requisite amendments being made, the defects complained of were not cause for dismissing the action.

2. On the hearing of an appeal in the superior court, it is immaterial whether the judgment appealed from be void or valid, if the appellee recognizes the appeal as duly taken, and raises no question touching the validity of the judgment below. The appellant by entering the appeal recognizes the judgment as the basis of it, and as something needful to be appealed from. Nor can he urge that the appeal was entered too late. The amount and date of the judgment need not be inquired into at the instance of the appellant.

3. After several appeal cases have, with the consent of parties and

v 91-39

by order of the appellate court, been consolidated into one case for trial, it is too late for the appellant by plea or motion to attack the jurisdiction as to one of the consolidated cases, on the ground that the amount involved therein was too small to bring it within the statute allowing appeals. If the appellant regarded it as too small he should not have entered the appeal, nor should he have consented to the consolidation so as to make that case abide the final judgment in the consolidated case.

4. Promissory notes given when there was no statute on the subject of usury and no limit as to the amount of interest, are not usurious, no matter how much past interest or usury was embraced in them as a part of the principal. If the debt was good and valid as to the principal and was mature at the time the notes were given, and by the notes the day of payment was postponed, this postponement was a sufficient consideration both for the interest and usury embraced as a part of the principal and for future interest at the rate expressed in the face of the notes.

April 24, 1893. Argued at the last term.

Before SHELBY ATTAWAY, judge *pro hac vice.* Bartow superior court. July term, 1892.

Six justice's court suits were brought by Neal against Branson, Reynolds and Tumlin, and judgments were rendered against the defendants. They appealed to the superior court, where the cases were consolidated and tried together, being referred to a special master. To his report exceptions were filed by both sides. All of these but one were overruled, and judgment in favor of the plaintiffs, the executors of Neal, was rendered. Reynolds brought his bill of exceptions, and a cross-bill of exceptions was taken by the plaintiffs.

The suits were on five notes for $100 each, and one for $30, dated December 12, 1873, due October 25, 1873, stipulating for interest at 18 per cent. per annum, and signed by the defendants. In the superior court were filed pleas setting up usury. After the plaintiffs had put in evidence before the master the original notes sued on, Reynolds moved to dismiss the appeals, because it did not appear from the record that the same were entered within four days from the date of the rendition of the judgments in the justice's court from which the

appeals purported to have been entered, nor at what date the judgment was rendered in the justice's court in either of the cases, nor that any judgment was rendered. He further moved to dismiss the appeal in the suit on the $30 note, because the amount claimed was less than $50. He further moved to dismiss the actions as to himself (averring that he had never appeared or pleaded thereto, except for the purpose of insisting on the following grounds), because : (1) The summons did not command him to appear in the justice's court from which the appeal was entered; and (2) did not mention any militia district in or for which any justice's court was to be held ; and (3) was not made returnable to any court, nor did it command him to appear at any court, nor recite that any court would be held on the date on which it was made returnable, nor that the place of return mentioned therein was the usual place of holding justice's court in and for the 952d district G. M. (4) No judgment was rendered in the case in the justice's court of the 952d district G. M. on February 3, 1877, the date on which the summons was made returnable, nor does it appear that any justice's court was held on that day nor any action taken in the case in said court on that day. (5) The summons was not directed to defendant Reynolds, nor did it command him to appear anywhere at any time, but was only directed to all and singular the constables of said county and commanded them - to appear. The following is a copy of one of the summonses in question :

"Georgia, Bartow county. John Neal *vs.* J. C. Branson, P. H. Reynolds and Thomas Tumlin, secty. To all and singular the constables of said county : You are hereby required to appear personally or by attorney at my office in Kingston on the 3d day of Feby., 1877, to answer the plaintiff's demand in action of debt due by note for one hundred dollars, as in default thereof the court will proceed as to justice may appertain. This Jany. 8th, 1877.        L. Burrough, J. P. (L. S.)"

The others contained the words, "To the defendants," just before the words, "You are hereby required," etc.; and the words, "as per copy below," immediately after the words, "note for one hundred dollars." Over objection the master allowed the plaintiffs to amend the summonses by inserting at the proper places therein the words, "952d Dist. G. M." and the words, "to execute and return," and the words, "To the defendants," and the words, "at the usual place of holding justice courts in said district." To the allowance of this amendment and to the overruling of the motion to dismiss, Reynolds excepted.

He pleaded that on February 3, 1877, L. Burrough, J. P., without his consent and in his absence continued the cases to a date more than ten days afterwards, and hence the suits, if valid as to him as commenced, thereby lapsed and became discontinued, and the so-called judgments rendered on February 23d were as to him null and void, he never having consented to the trial on the day the judgments were rendered, nor to the continuance, nor was he present, nor did he then or previously appear or plead or in any manner waive his right of objection to said proceedings. He also pleaded that the judgments were rendered against him at a day other than that upon which he was summoned to appear, and not upon the regular day set for the court for the trial of these cases, nor upon a regular court day, nor had he his day in court; and that as to two of the cases he was not in any manner summoned to appear, nor did he appear and plead nor waive summons nor service. The master found against these pleas, and the findings were excepted to by Reynolds, he alleging that the justice's court had no authority to continue the cases for more than ten days, and hence the judgments rendered on February 23d were null and void, the court having lost jurisdiction; that under the law as then existing there

were no regular court days in justices' courts, and the day on which the judgments were rendered was not a regular court day; and that the principal and interest on the $30 note, at the date of the judgment in the justice's court, amounted to a few dollars less than $50, and no evidence appeared before the master as to the amount of cost accrued, and the case was not appealable to the superior court, whether the cost added would make the sum over $50 or not.

On the question of usury, the master found as a fact that the six notes in question were given in renewal of four notes aggregating $350, executed in 1871 while usury laws were of force; that the original amount loaned on the first note was $300, and the original notes were usurious; that afterwards, December 12, 1873, the usury laws having been repealed, these six notes aggregating $530, covering and including the original loan of $300, were executed, adding to the $300 interest at 18 per cent. per annum, making the $530; that the original notes were then long past due, and indulgence or forbearance was granted by Neal, and the new notes made to fall due October 25, 1874; and that they included the original loan of $300 with 18 per cent. interest from March 7, 1871, to December 12, 1873. As a matter of law, he reported that on December 12, 1873, no usury laws were of force, and parties could legally contract for any rate of interest they saw proper, and the usury contracted to be paid while usury laws were of force could be included in the new notes without the taint of usury attaching to the new promises; and that the forbearance or indulgence granted by Neal was a sufficient consideration to support the transaction and new promise, and the defendants were bound thereby. This finding is assigned as error by Reynolds, because, he says, it did not appear from the evidence that the usurious interest accruing on the original loan was included in the

new loan by any express agreement of the parties that it should form any part of the consideration for future forbearance by Neal; and that in the absence of such understanding, the notes sued on were invalid to the extent of the usury accruing from March 7, 1871, to December 12, 1873, and remained tainted thereby, and were *pro tanto* without consideration, and should have been reduced.

DEAN & SMITH, NEAL & SWAIN and HARRISON & PEEPLES, for Reynolds.

JOHN W. AKIN, by brief, *contra.*

BLECKLEY, Chief Justice.

1. When a case is on appeal in the superior court from a justice's court, any amendment of the summons, whether in matter of form or of substance, may be made which could have been made whilst the case was pending in the primary court. The only restriction on either court is, that there must be enough to amend by. Code, §3479. There was enough to amend by in the present case, and the amendments made cured the defects complained of.

2. Surely the appellant should not be allowed to break up his own appeal by urging that he had taken it too late, or from a void judgment, or from one too small in amount. After securing the delay incident to the appeal, he might well bide the election of the other party on such questions as these. What the appellate court might do on its own motion for its own ease or protection, need not be considered. Certainly, it is not obliged to take notice of such things at the instance of the appellant, but can assume without inquiry or examination that the appeal was well taken, the other party being satisfied with it.

3. The consolidated case was not subject to be reopened or remodeled or defeated by looking into the amount involved in one of the separate cases embraced

in the consolidation. The order or judgment of consolidation was passed at the instance of both parties. Why should it be disregarded at the instance of one of them? Besides, the one who sought to recede was the appellant, the same party who brought all the cases into the superior court and caused that court to be troubled with them. For this reason, the principle of the ruling just made under the preceding head of this opinion applies here also.

4. On the question of usury, it is to be observed that there was no usury law in force when these notes were given. This being so, there was no obstacle to charging interest to an unlimited amount for the future use of money then due from the debtor to the creditor, and for future forbearance to require or enforce payment; and it mattered not whether a part of the interest so charged was added to and made a part of the principal of the notes, and a part covered by a rate named in the notes as that which the principal, thus enlarged, was to bear; or whether the amount actually and legally due when the notes were given, and that only, was made principal, and the whole interest provided for by naming in the notes a rate of interest on that principal which would produce, by the time the new term of credit expired, an aggregate sum for interest equal to the total interest charged. It is matter of indifference, when there is no usury law in force, whether interest, the whole or a part of it, be added to the principal, or whether the principal, pure and simple, be expressed in the note, and the rate of interest named in the instrument be made high enough to produce all the interest agreed upon. In the notes now under consideration, a part of the sum charged for interest and agreed to be paid was incorporated with the principal, and a part was to accumulate as interest *eo nomine* at the rate mentioned on the face of the notes. But the two controlling facts are : first, there was a sum

actually and legally due as the principal of prior notes at the time the new notes were given; and, secondly, a new term of credit was agreed upon, and the day of payment of the money already due was postponed accordingly. This postponement was a sufficient consideration for all the interest agreed upon and promised in the new notes, both that which was embraced in the notes as principal, and that which was not so embraced, but was provided for by the rate of interest which the notes specified. True, this would give interest upon interest to the extent of so much of the nominal principal as was made up of interest; but compound interest is not usury, any more than simple interest is usury, when no usury law is in existence.

Thus far, we have treated the case without reference to the fact that the notes now in controversy were given in renewal of prior notes which were infected with usury. Did the infection of the first set of notes taint the second? We think not. The usury of the first set did not taint the principal of *that* set, but left it pure and collectible. That principal went into the second set. As there was no usury law, the granting of further time for paying that money upon a new agreement was the same, in effect, as receiving on the first notes that amount of money in payment, and then loaning it again for the new term of credit and taking therefor these new notes. Had this course been pursued, no one would suspect or imagine that any of the interest covered by the new notes would have been usury. With a good principal, a term of credit to serve as a consideration for unlimited interest, and no usury law, how is it possible to make a contract which can rightly be held to be tainted with usury, either as to the whole of the interest, or any part of it? *Ballard* v. *Peoples Bank,* 61 *Ga.* 458. *Judgment affirmed. Cross-bill dismissed.*