## AUSTELL et al. v. THE CITY OF ATLANTA.

1. There was under section 60 of the act of February 28th, 1874, establishing a new charter for the City of Atlanta, no authority for selecting a fifth freeholder to act with the two freeholders appointed by the mayor and general council, and the two freeholders appointed by a lot owner, in assessing damages occasioned to the latter by the widening of a street, unless the four freeholders thus appointed could not agree as to the matters referred to them.

2. Under the act of December 27th, 1890, amending the above recited act, there must in all such cases be a fifth assessor, and he must be selected by the freeholders appointed by the city and the lot owner, after such freeholders have taken an oath "faithfully and impartially to perform the duties for which they were appointed," the first of these duties being the selection of the fifth assessor to act as umpire.

3. Where such umpire was selected before the other freeholders had taken this oath, the selection was not lawful, and the board of assessors could take no valid action in the premises, being without jurisdiction to do so, because not constituted in conformity to the plain and express requirements of the statute.

4. The entering by a lot owner of an appeal to the superior court from the action of a board of assessors which, for the reason above indicated, was without jurisdiction in the premises, did not estop the appellant from making in that court a motion to dismiss the entire proceeding on the ground that the tribunal appealed from was without jurisdiction; and such motion, when made, ought to have been sustained. Whether, under such circumstances, the appeal should have been treated as a mere nullity, or as the foundation of a de novo hearing in the superior court, it was immaterial upon whose motion that court was asked to quash the proceeding.

Argued January 11,—Decided February 22, 1897.

Appeal from condemnation proceedings. Before Judge Lumpkin. Fulton superior court. March term, 1896.

*John L. Hopkins & Sons*, for plaintiffs in error.
*J. A. Anderson* and *George Westmoreland*, contra.

LUMPKIN, Presiding Justice.

The 60th section of the act of 1874, establishing a new charter for the City of Atlanta (Acts of 1874, p. 131), con—

ferred upon the mayor and general council power and au-
thority to open, lay out, widen, straighten, or otherwise
change streets, lanes and squares in that city. It also pro-
vided for the appointment of freeholders to assess damages
in such cases, two of whom were to be appointed by the
municipal authorities, and the other two by the owners of
lots to be affected; and the section further declared that "in
case said assessors cannot agree, they shall select a fifth free-
holder; the said assessors to take an oath that they will
faithfully discharge their duties, and either party to have the
right to enter an appeal to the superior court of Fulton
county, within ten days from the rendition of said award."

In October, 1890, the city authorities began proceedings
to condemn certain property of the Austell estate for the
purpose of widening Edgewood avenue. Assessors, how-
ever, were not appointed until January, 1891, after the
passage of the act of December 27th, 1890, amendatory of
the act first above cited. See Acts of 1890-91, vol. 2, p.
446. Under this latter act, the first duty of the four asses-
sors appointed by the parties at interest is to take an oath
"faithfully and impartially to perform the duties for which
they were appointed." The act then provides that "imme-
diately after taking and subscribing to the oath aforesaid,
they shall, before proceeding to the consideration of the
question submitted, select a fifth assessor, who shall act as
umpire, and take and subscribe to the oath prescribed for
assessors, as above stated."

In the proceeding above mentioned, the city authorities
selected two assessors; the representatives of the Austell
estate two assessors; and the four thus chosen, before tak-
ing any oath at all, selected an umpire. All five then, at
the same time, took and subscribed an oath to "faithfully
discharge their duties, respectively, as assessors, as afore-
said," and to "truly and faithfully assess the damages sus-
tained, if any, in consequence of the widening, opening or
extending of Edgewood avenue, aforesaid." The assessors

then proceeded to assess the damages; a majority of them, consisting of the two selected by the city and the umpire, awarding as the amount of the damages to be allowed $5,200 for the land to be taken, and $1,000 additional for damages to a building, and the expense of making necessary changes therein in case the work should be done by the owner. The two assessors selected by the Austell estate, by a minority report, fixed the damages at $15,200. The owners of the property entered an appeal to the superior court. When the same came on for trial, they moved to dismiss the entire condemnation proceeding on the grounds, (1) that the assessors had not taken and subscribed to the oath prescribed by law; (2) that the fifth assessor, the umpire, had not been selected as required by law, in that he was chosen by the other assessors before they had taken the prescribed oath; and (3) because all of the assessors were sworn at the same time. The overruling of this motion is the error assigned in the bill of exceptions.

1. It is obvious that, in so far as relates to the selection and qualification of the assessors, the present proceeding was not in conformity to the act of 1874; for, under its terms, there was in no event to be an umpire unless the four freeholders originally appointed had already disagreed as to the matters referred to them. It will also have been observed that the oath taken by the assessors was not that prescribed by the act above mentioned.

2. Nor did the course pursued conform to the act of 1890, which, as has been seen, was passed after the proceeding was instituted, but before the assessors were selected. This act declares that there must in all cases be a fifth assessor, or umpire, and as to this matter is imperative without regard to any question of disagreement among those selected by the parties. The act also requires the assessors thus chosen, before they choose the umpire, to take an oath "faithfully and impartially to perform the duties for which they were appointed." In the present case, there was a failure in two re-

spects to comply with the requirements of this statute. First, the assessors did not take the oath prescribed; and second, the four assessors selected by the parties appointed the umpire before taking any oath at all.

It was earnestly argued here, that the oath actually taken was in substance the same as that required by the act in question. It is unnecessary, however, to determine whether this contention is sound or not; for, in our opinion, the omission of the four assessors to qualify before choosing the umpire rendered the entire proceeding nugatory. It was of the very utmost importance, both to the property owners and to the city, that this fifth assessor should be impartially selected; and the plain purpose of the statute was to require those by whom he was to be selected to take an oath that they would be impartial in performing this, their initial duty in the premises. It is no part of the business of this court to consider whether such a legal provision was or was not necessary. The General Assembly evidently thought it was, and if in the opinion of that body a requirement of this kind was wise and proper, it is our duty to enforce the same. Surely, there is no reason why we should presume to ignore it, or permit the municipal authorities of Atlanta to do so.

3. It follows from the foregoing, that the board which acted in the present case had no lawful authority to assess the damages, for the plain reason that they were wholly without jurisdiction to do so, because not constituted in conformity to law. Condemnation statutes must be strictly construed. If the method to be pursued is prescribed by statute, it must be closely followed, and an attempt to exercise the right to condemn in a different manner will be ultra vires and void. This is well settled law, and really does not require the citation of authority to support it. Nevertheless, we quote the following from 2 Dill. Mun. Corp. (4th ed.) §§604, 605: "Not only must the authority to municipal corporations or other delegated legislative agents, to take private property, be expressly conferred, and the use for

which it is taken specified, but the power, with all constitu-
tional and statutory limitations and directions for its exercise
must be strictly pursued. Since the power to condemn pri-
vate property against the will of the owner is a stringent and
extraordinary one, based upon public necessity or an urgent
public policy, the rule requiring the power to be strictly con-
strued and the prescribed mode for its exercise strictly fol-
lowed, is a just one, and should, within all reasonable limits,
be inflexibly adhered to and applied. Especially will the
courts require a *strict compliance with all conditions pre-
cedent* to the exercise of the power, and all provisions as to
the manner of its exercise intended for the benefit and pro-
tection of the citizen. If the authority be not thus pursued,
the proceedings will not have the effect to divest the owner
of his property. If defective in respect to jurisdictional
requisites, they will be void."

4. The entering of the appeal by the owners of the Aus-
tell property did not estop them from making, in the superior
court, a motion to dismiss the entire proceeding on the
ground that the tribunal appealed from was without juris-
diction. The superior court, in such a case, has appellate
jurisdiction only. If the inferior judicatory had no juris-
diction, the superior court could acquire none, nor could it
properly assume to deal with the case at all, except to strike
it from the docket. An appeal may waive irregularities; it
never vitalizes. The cause being dead when the lower trib-
unal dealt with it, it was still dead after it reached the
superior court, and all that court could do was to bury it.
Appellate jurisdiction to deal with the merits of a case on
appeal applies only to a cause brought from a lawfully con-
stituted and organized court. "Where the trial court has no
jurisdiction of the subject-matter of a cause, the appellate
court has none, except to annul by reversal the illegal pro-
ceedings below. It cannot remand the cause to the trial
court, nor retain the cause for further proceedings." 2 Enc.
of Pl. & Pr. p. 23, and cases cited. In this connection, see

also the following authorities, all of which bear more or less directly upon the question in hand: Waters v. Walker (Tex.), 17 S. W. Rep. 1085; Ball v. Biggam (Kan.), 23 Pac. Rep. 565; Plunkett v. Evans (S. D.), 50 N. W. Rep. 961; Dillard v. St. Louis &c. R. R. Co., 58 Mo. 69; Taylor v. Smith, 64 Ill. 445.

It makes no difference by what party the attention of the court is called to the question of its want of jurisdiction in the premises, its duty being simply to decline taking any action in such a case, except, as expressed in the colloquial phrase, to "throw it out of court." Our case of *Reynolds* v. *Neal*, 91 *Ga.* 609, is clearly distinguishable from the case at bar, because there the court appealed from was *not* without jurisdiction of the *subject-matter;* and the appellee having acquiesced in the appeal as duly taken, and raising no question touching the validity of the judgment below, it was held that the appellant, by entering the appeal, recognized the judgment as the basis of it, and as something needful to be appealed from. In the present case, the board of assessors had no jurisdiction to do anything, and the whole proceeding was coram non judice.

　　　*Judgment reversed. All the Justices concurring.*