# 🜲ythrυίΠℓ.

## CITY OF RICHMOND V. CHILDREY.

### June 10, 1920.

1. EMINENT DOMAIN—*Right Wholly Statutory—Derogation of Common Law.*—The right to take or damage private property for a public use is wholly statutory. It is, in derogation of the common law, seriously affects the rights of private citizens, and can only be exercised for the purpose, to the extent, and in the manner provided by law. It is an incident of sovereignty, not conferred but limited by the Constitution.

2. EMINENT DOMAIN—*Power Resides in Legislature—Limitations by Legislature—Reasons for Restraints.*—The power to exercise the right of eminent domain resides in the legislature, as the representative of the people, but may be delegated by it to appropriate subordinate agencies. In making such delegation, the power of the legislature is without limit, except so far as restrained by the Constitution. It may prescribe what shall be done, and how, and may designate the order in which the various steps are to be taken. It may place its own limitations on the extent to which the power will be granted and the manner of its exercise, and when it does so its mandate must be obeyed. It is not for the courts to seek for reasons for restraints upon the exercise of the power.

3. EMINENT DOMAIN—*Powers Conferred Cannot be Enlarged nor Restrained by Construction—Reasonableness of Restraint.*—The powers conferred cannot be enlarged, nor the restraints imposed minimized, by construction of the courts. The legislature is the sole judge of the propriety of granting the power, and the extent and manner of its exercise. Even in prescribing the manner in which the power shall be exercised, its action may be founded on good reasons, or bad reasons, or it may be without reason. It may be arbitrary, if it chooses, without accountability to any one save the public. With this the courts have no concern, nor can they refuse to enforce restraints simply because they regard them as unreasonable, or are unable to ascertain what, if any, reason actuated the legislature in imposing them.

4. EMINENT DOMAIN—*Strict Construction of Statutes.*—The courts

everywhere hold that acts conferring the power of eminent domain shall be strictly construed against the grant, and that one claiming the power must bring himself strictly within the grant, both as to the extent and manner of its exercise. The requirement of the law must be fulfilled, whether reasonable or unreasonable.

5. EMINENT DOMAIN—*Change of Grade—Resolution Directing Change of Grade of Street Must Precede Ascertainment of Damages—Case at Bar.*—Under act of March 12, 1908 (Acts 1908, ch. 217), as amended by act of March 12, 1912 (Acts 1912, ch. 160), a resolution of the administrative board of the city of Richmond directing the grading to be done must precede the ascertainment of damages to landowners by the board as in cases of proceedings by councils of cities and towns. In the instant case the administrative board assessed the damages before they adopted the resolution directing the grading to be done. The board went on the premises before they had determined to have the work done, "for the purpose of determining the questions involved in establishing the proposed grade," and this question was not settled until the next meeting, yet while upon the premises they assessed the damages.
   *Held:* That this was not a sufficient compliance with the statute.

6. EMINENT DOMAIN—*Change of Grade—Damages—Instructions—Directing Verdict.*—In an action for damages to a landowner from a change of grade of a street, objection was made to one of the instructions which hypothetically directed a verdict for the plaintiff. The objection was that the instruction should "have been qualified by proper statements in regard to such benefits, general and special, as resulted from the grade." The instruction simply stated hypothetically a case supported by the evidence, and told the jury, if they believe those to be facts, they should find for the plaintiff. The instruction said nothing as to the amount, and did not deal in any way with the measure of damages. This instruction was followed by several others covering in detail the subject of the measure of damages, to which no error is assigned.
   *Held:* That the instruction correctly stated the law, and there was no error in giving it.

Error to a judgment of the Law and Equity Court of city of Richmond, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*H. R. Pollard,* for the plaintiff in error.

*Conway R. Sands* and *A. H. Sands,* for the defendant in error.

BURKS, J., delivered the opinion of the court.

In an action of trespass on the case, the defendant in error recovered a judgment against the city of Richmond for the sum of $1,185, for damages to her residence resulting from the change of grade of the street in front of such residence. The case is brought here to review that judgment.

The city pleaded the general issue of not guilty, and also tendered a plea of *res judicata.* The trial court rejected the latter plea; and further instructed the jury that the matters set up in said plea constituted no bar to the plaintiff's action. The propriety of these rulings is dependent upon the proper interpretation of the statute under which the proceedings set forth in the special plea were taken.

The special plea set forth in detail the acts done by the city showing, as it claimed, full compliance with the statute under which it acted, and averred that, as the plaintiff had not appealed, she was barred from maintaining her present action.

Under an act of March 12, 1908 (Acts 1908, p. 328), when the council of any city or town desired to change the grade of a street and the improvement was likely to cause damage to abutting owners, the council was directed to designate some committee of the council, or some officer of the city or town, to personally inspect the premises and ascertain what damages, if any, would accrue to the owners of the properties likely to be affected. The act also con-

tained other important provisions which need not be here recited. This was a general act applicable to all the cities and towns in the Commonwealth. By an act approved February 9, 1912 (Acts 1912, p. 43), the form of government of the city of Richmond was changed, and certain powers formerly exercised by the city council were devolved upon the administrative board, among them control over the grading of city streets. Shortly thereafter and at the same session of the legislature, the act of March 12, 1908, was so amended as to invest the administrative board, where one existed under the charter of any city or town, with the powers formerly exercised by the council with reference to grading streets. Acts 1912, p. 354. It is said in the brief of counsel for the defendant in error that this amendment was manifestly adopted at the instance of the city of Richmond, as it was the only city having such a board. It is this amended act of 1912 we are called upon to interpret, and so much of it as is necessary is here set forth, placing in italics the changes made by the amendment, and omitting slight verbal alterations:

"Sec. 1. That whenever the council of any city or town shall deem it desirable to grade any street, alley or other public place belonging to the city or town, *or whenever any administrative board of any city or town, created under the charter of such city or town, and by such charter authorized to exercise powers and functions of an administrative character* they shall, *as the case may be,* by resolution or ordinance, direct the same to be done, and if the improvement be such as may cause damage to the abutting owners, the resolution or ordinance shall designate and direct some committee of the council or some officer of the city or town, *where the determination is made by the council, and where made by an administrative board by the board itself,* to proceed by personal inspection of *all of* the premises *likely to be affected by such grading,* to ascertain

what damages, if any, will accrue to the owners *of the several properties so likely to be affected,* and it shall be the duty of the committee, *officer, or board, as the case may be, upon such ascertainment having been made,* to give written notice to all of the abutting owners of the amount of the ascertainment made by them or him, which notice shall cite the said owners to appear before such committee, officer *or board, as the case may be,* not less than ten (10) days after the service thereof, at a time and place to be designated therein, to show cause, if any they can, against the ascertainment made as aforesaid. The notice may be given by personal service on each of the property owners, except that notice to an infant or insane person may be served on his guardian or committee, and notice to a non-resident may be mailed to him at his place of residence or served on any agent of his *resident in the city or town or on his tenant occupying the premises,* or, in any case, in lieu of such personal service on the parties *or their agents,* such notice may be given by publishing the same in some daily newspaper published in the city or town once a week for two successive weeks, the last publication to be made at least ten (10) days before the day on which the parties are cited to appear. Any one wishing to make objection to such ascertainment, so far as the same affects him, may appear in person or by counsel and state his objections. If his objections are overruled he may within ten days thereafter, but not afterwards, have an appeal as of right to the corporation or hustings court of the city or in case of a town to the circuit court of the county in which such town is situated. * * * Every such appeal shall be tried by the court or the judge thereof in a summary way, without pleadings in writing, in term time or vacation, after reasonable notice to the adverse party, and the hearing shall be *de novo.*"

Acting under these statutes, a majority of the adminis-

trative board, having in hand a blue print of the street to be graded, taken from the files of the office of the city engineer, went on the premises and examined them and the roadway, and agreed then to establish the grade of the street as shown on the blue print, conferred as to the damages, and ascertained that there would be no damage to the property of the defendant in error, and then came back and, on June 12, 1916, adopted the two following resolutions:

"Mr. Beck moved that the grade of Canepa street from Oakwood avenue to Dickinson street, as shown on the blue print dated June 3, 1916, on file in the office of the city engineer, be and is hereby adopted and declared to be the true grade of said street and that any and all city improvements on this street must be executed in conformity with this grade hereby so established, which was adopted as follows: * * *

"Mr. Beck moved that damages to abutting property owners, as follows, whose property abuts on both sides of Canepa street, between Oakwood avenue and Dickinson street, as shown on a certain blue print dated June 3, 1916, on file in the office of the city engineer, by reason of the proposed grading of said street, be assessed at nothing: * * *"

Notice addressed to the defendant in error of the finding and ascertainment of the board as to damages, and requiring her to appear before the board at a time and place mentioned in the notice to show cause, if any she could, "against said ascertainment by said board," was duly published in a newspaper as required by law, and it is conceded that the publication was equivalent to personal service. The defendant in error did not appear and show cause against the finding of the board, nor did she take any appeal from its decision, but more than a year thereafter, treating the proceedings by the board as a nullity, brought the present

action and recovered a judgment against the city as afore-said.

The trial court rejected the plea of *res judicata* and gave the instruction aforesaid because it was of opinion that the statute authorizing the procedure by the board should be strictly construed, and that, so construing it, the provisions thereof had not been strictly followed by the board.

[1-3] The right to take or damage private property for a public use is wholly statutory. It is in derogation of the common law, seriously affects the rights of private citizens, and can only be exercised for the purpose, to the extent, and in the manner provided by law. It is an incident of sovereignty, not conferred but limited by the Constitution. The power to exercise the right resides in the legislature, as the representative of the people, but may be delegated by it to appropriate subordinate agencies. In making such delegation, the power of the legislature is without limit except so far as restrained by the Constitution. It may prescribe what shall be done and how, and may designate the order in which the various steps are to be taken. It may place its own limitations on the extent to which the power will be granted and the manner of its exercise, and when it does so its mandate must be obeyed. It is not for the courts to seek for reasons for restraints upon the exercise of the power. The powers conferred cannot be enlarged nor the restraints imposed minimized by construction of the courts. The legislature is the sole judge of the propriety of granting the power, and the extent and manner of its exercise. Even in prescribing the manner in which the power shall be exercised, its action may be founded on good reasons, or bad reasons, or it may be without reason. It may be arbitrary if it chooses, without accountability to any one save the public. With this the courts have no concern, nor can they refuse to enforce restraints simply because they regard them as unreasonable, or are unable to ascertain

what, if any, reason actuated the legislature in imposing them. 3 Dillon (5th ed.), sec. 1024, 1040, 1041; Cooley's Const. Lim. (7th ed.) 760-63; 2 Lewis' Em. Dom. (3d ed.), sec. 615.

[4] The courts everywhere hold that acts conferring the power of eminent domain shall be strictly construed against the grant and that one claiming the power must bring himself strictly within the grant, both as to the extent and manner of its exercise. As said in *Brewster* v. *Peru,* 180 Ill. 124, 128, 54 N. E. 233, 234: "there must be a close straightforward and honest compliance with every substantial requirement of the law." The requirement of the law must be fulfilled whether reasonable or unreasonable. As said in *Carson* v. *City of Richmond,* 113 Va. 527, 529, 75 S. E. 119, "the power conferred must be strictly construed and the manner of executing it carefully observed;" and in *Ches. & O. Ry. Co.* v. *Walker,* 100 Va. 69, 40 S. E. 633, 914, grants of power, especially the right of eminent domain, are to be strictly construed. To the same effect is *Painter* v. *St. Clair,* 98 Va. 85, 34 S. E. 989. These principles have been applied in cases too numerous to be cited.

In *Core* v. *City of Norfolk,* 99 Va. 190, 37 S. E. 845, the statute required that "if * * * the council of a city * * * cannot agree on the terms of purchase with those entitled to the lands wanted" for its purposes, it may institute condemnation proceedings in the proper courts. The council had not determined to condemn, but by a resolution reciting that it *may be expedient* to open a certain street, and that the council desired to know at what price so much of the real estate as the city might need might be obtained, *if it should be deemed expedient* to open the street, passed a resolution appointing a committee of the council to find out who were the owners of the property, and directed them to confer with the owners in regard to obtaining the necessary property either by purchase or condemnation. This

committee made the necessary investigation and inquiry, and reported the results of it to the council. After that the council passed an ordinance reciting that they had been unable to agree on the terms of purchase with those entitled to the land, and directed condemnation proceedings to be instituted. It was held that this was not sufficient, that a *bona fide* effort to purchase should have been made *after* the resolution to open the street, and that efforts made before that time were not a compliance with the statute.

In *Austell* v. *Atlanta,* 100 Ga. 182, 27 S. E. 983, the statute provided for the appointment of freeholders to assess damages, two of whom were to be appointed by the city and two by the owners of the lots to be affected. The statute further provided that, "in case said assessors cannot agree, they shall select a fifth freeholder; the said assessors to take an oath that they will faithfully discharge their duties, and either party to have the right to enter an appeal * * * within ten days from the rendition of said award." The city appointed two assessors, the landowner two, and the four thus chosen, before taking any oath at all, selected an umpire. All five then at the same time took and subscribed an oath to "faithfully discharge their duties, respectively, as assessors, as aforesaid" and to "truly and faithfully assess the damages sustained, if any, in consequence of the widening, opening or extending of Edgewood avenue, aforesaid." This was held not to be a sufficient compliance with the statute. It was said to be of the utmost importance that the fifth assessor should be impartially selected, and that the plain purpose was to require those by whom he was to be selected to take an oath that they would be impartial in performing this their initial duty.

In *Cambria Street,* 75 Pa. 357, the commissioners were required to take an oath that they would "impartially discharge their duties." Instead of this, the oath taken was that the commissioners would "faithfully discharge their

duties," and this was held not a sufficient compliance with the statute.

In *Merritt* v. *Portchester,* 71 N. Y. 309, 27 Am. Rep. 47, the statute required that the commissioners should take an oath "faithfully and fully to discharge the duties" required of them. The oath that each commissioner actually took was that he would discharge the duties required of him "to the best of his ability." This was held not to be a sufficient compliance with the statute.

In *Union Pacific Ry. Co.* v. *Burlington & Mo. R. Co.,* 19 Neb. 386, 27 N. W. 238, the statute provided that before the selection of the five disinterested householders therein provided for, an ordinance should be passed prescribing the method of election and compensation of such householders and assessors. The householders were appointed in gross by an ordinance without the method prescribed by the statute and the compensation of the householders was not fixed prior to the assessment of damages made by them. The court held that this was not a sufficient compliance with the statute, and dwelt particularly upon the fact that the compensation of the commissioners was not fixed until after damages had been assessed.

We have hereinbefore set out the act of 1908, as modified by the act of 1912, and indicated by italics the modification made by the latter. Under the act of 1908, before there was any administrative board, it seems plain that the council could not "designate and direct some committee of the council or some officer of the city" to assess damages until after the council had by resolution or ordinance directed the grading to be done. Indeed, this seems to be admitted by counsel representing the city, because he can see a reason for it. He denies, however, that the same can be required of the administrative board, because no good reason can be assigned for it, but, as hereinbefore pointed out, that is not a sufficient answer.

[5] .If we eliminate from the 1912 act all reference to the council, and confine the language to the administrative board, which alone had power to act in the city of Richmond, and use only so much of the language of the act as necessary to make sense, we shall find that the act under which the city acted reads substantially as follows: "Whenever any administrative board * * * shall deem it desirable to grade any street, alley or other public place belonging to the city it shall by resolution direct the same to be done, and if the improvement be such as may cause damage to the abutting owners, the resolution shall designate and direct the board to proceed * * * to ascertain what damage, if any, will accrue to the owners," etc.   However ungrammatical the language as it appears in the act may be, it is just as plain that the resolution directing the grading to be done must precede the ascertainment of the damages in cases of proceedings by administrative boards as in cases of proceedings by councils of cities and towns.   Indeed the same language is applicable by the terms of the act to both councils and administrative boards.   Aside from the apparent admission of counsel that councils have no authority to assess damages before passing the resolution, the case of *Core* v. *City of Norfolk, supra,* is very persuasive, if not direct authority that they have no such power.   If councils have none, then administrative boards have none, for they are controlled by the same language of the same act.   In the case at bar, the administrative board assessed the damages before they adopted the resolution directing the grading to be done. The language of the petition for the writ of error is, "that the board as a body, a majority being present, visited the place with the said blue print in hand for the purpose of determining the questions involved in establishing the proposed grade; that they then and there determined to establish the grade as shown on the said blue print, and at the same time undertook to discharge the duties devolved

upon them by the act of 1908, as amended, for the purpose of ascertaining the damages that would result to abutting property owners from the proposed work. The evidence shows that at their next meeting, June 12, 1916, the board passed a formal resolution adopting as the grade for Canepa street the plan shown upon the said blue print, and that at the same meeting they directed the city engineer to advertise for bids and to carry the grade into execution. It also appears that at the same meeting and subsequent to the foregoing resolution the board passed a formal resolution ascertaining that the damages to accrue to the property owners affected over and above the benefits resulting to them would be nothing."

It will be observed that when the board went on the premises they had not determined to have the work done, but they went there "for the purpose of determining the questions involved in establishing the proposed grade," and that this question was not settled till "next meeting, June 12, 1916," and yet while there they assessed the damages. The facts are very similar to the case of *Core* v. *City of Norfolk, supra.* The question was repeatedly asked, both in the brief and the oral argument, as the board had already been in person upon the property and assessed the damages, why should they do the useless thing of going again upon the property and doing what had already been done? The all-sufficient reply is that the statute requires the assessment to be made *after and not before* the adoption of the resolution directing the grading, and its requirement is in its nature jurisdictional. It is not for the courts to inquire why the legislature inserted such a requirement. It is sufficient to say that it is there, and it is material. Here our powers cease.

[6] Objection was made to one of the instructions which hypothetically directed a verdict for the plaintiff. The objection is that it should "have been qualified by proper

statements in regard to such benefits, general and special, as resulted from the grade." The instruction simply stated hypothetically a case supported by the evidence and told the jury if they believed those to be facts, they should find for the plaintiff. The instruction said nothing as to the amount, and did not deal in any way with the measure of damages. This instruction was followed by several others covering in detail the subject of the measure of damages to which no error is assigned. The instruction correctly stated the law, and there was no error in giving it.

We find no error in the judgment complained of, and it will, therefore, be affirmed.

*Affirmed.*