## Staunton.

# H. G. CHARLES v. BIG SANDY AND CUMBERLAND RAILROAD COMPANY.

September 17, 1925.

Absent, Prentis, P.

1. EMINENT DOMAIN—*Effort to Acquire Land by Purchase—Section 4363 of the Code of 1919 is Mandatory.*—Section 4363 of the Code of 1916 providing that no proceeding shall be taken to condemn property until there has been a *bona fide* but ineffectual effort to acquire the same by purchase, is mandatory.

2. EMINENT DOMAIN—*Effort to Acquire Land by Purchase—Section 4363 of the Code of 1919—Case at Bar.*—In the instant case, a proceeding to condemn land, the landowner answered that it was not true, as set forth by the petitioner, that a *bona fide* effort to purchase the land sought had been made. Without compelling a joinder of issue upon this denial the judge, over the protest and objection of the landowner, appointed commissioners pursuant to the prayer of the petition and refused to hear any evidence on the question prior to the appointment of the commissioners.

   *Held:* That it was incumbent upon the judge, acting in vacation, to ascertain whether or not jurisdiction had been acquired of both parties and the subject matter and that the question of the *bona fide* effort to purchase was jurisdictional.

3. EMINENT DOMAIN—*Effort to Acquire Land by Purchase—Section 4363 of the Code of 1919—Object of the Statute—Case at Bar.*—A landowner should not be put to the trouble and possible expense of counsel fees upon the mere whim or caprice of the condemnor, when a *bona fide* effort to purchase his land would in all probability terminate the transaction. Without first determining the question of a *bona fide* offer having been made by the condemnor, the judge was without jurisdiction to entertain the petition of the condemnor, and hence without jurisdiction to appoint the commissioners.

4. EMINENT DOMAIN—*Construction of Statute Conferring Power.*—Statutes conferring the power of eminent domain are strictly construed and the authority conferred in such statutes must be carefully observed.

5. EMINENT DOMAIN—*Effort to Acquire Land by Purchase Jurisdictional—Section 4363 of the Code of 1919—Case at Bar.*—In the instant case,.

where the landowner in eminent domain proceedings, by his answer, denied that an ineffectual attempt to purchase the land had been made, the judge should have heard the evidence upon this question before appointing commissioners, and in the event the company failed to affirmatively show that it had made a *bona fide* effort to agree upon terms of purchase with the owner, he should have dismissed the proceedings.

6. EMINENT DOMAIN—*Power to Condemn—Public Service Corporation— Internal Improvement Company—Common Carrier—Railroad—Case at Bar.*—In the instant case, a proceeding to condemn land, the landowner denied that the company was a public service corporation or an internal improvement company, authorized by its charter to exercise the powers of eminent domain. The company had operated as a common carrier of freight and passengers for years and engaged in no other business. It was an interstate carrier and had complied with the provisions of the interstate commerce act. The company had been recognized as a railroad by the State Corporation Commission and the Interstate Commerce Commission.

*Held:* That the company was a railroad company vested with the powers of eminent domain.

7. EMINENT DOMAIN—*Trial by Jury—Appointment of Commissioners— Constitutionality.*—The procedure to be followed in the condemnation of land is purely statutory. That the statute provides that a commission, instead of a jury, shall ascertain what will be a just compensation for the land taken or damaged does not make it amenable to the objection that it denies the landowner a trial by jury and is therefore unconstitutional. There is nothing in the constitution which suggests or requires a trial by jury.

8. EMINENT DOMAIN—*Landlord and Tenant—Railroad Improvements upon the Land sought to be Condemned.*—In the instant case, eminent domain proceedings, the railroad company at the time it instituted the condemnation proceedings was operating a railroad over the lands sought to be condemned under deeds of lease from the landowner to another which deeds had been assigned to the railroad company and the landowner complained that the commissioners did not allow him anything for bridges, trestles, cross ties, etc., upon the land sought to be condemned.

*Held:* That as the lessee reserved the right to remove the fixtures in question they were not the proper elements to be taken into consideration by the commissioners in awarding damages for the land taken.

9. EMINENT DOMAIN—*Railroads—Damages—Value of Grade Work and Cuts, etc., upon the Land.*—In an eminent domain proceeding it appeared from the evidence that the railroad, at the time the proceedings were instituted, was operating a railroad over the land sought to be

condemned under a lease by the landowner to another which had been assigned to the railroad. It appeared from affidavits filed by two of the commissioners that in their assessment of the damages they did not consider the value of the grade work such as cuts, fills and roadbed. Regardless of the fact that the grade work was done by the railroad the landowner is the owner thereof and the railroad ceased to have any control over the same on the expiration of its lease and it was error not to allow the landowner compensation for the same.

10. EMINENT DOMAIN—*Damages—Market Value—Adaptability of Land to Certain Uses—Case at Bar.*—In the instant case the land sought to be condemned by a railroad was already adapted to railroad purposes by reason of a roadbed already constructed. The trial court took the view that in assessing damages the commissioners should not consider the uses it was possible to make of the land nor what it was being used for but, its market value. The Supreme Court of Appeals refused to subscribe to this view of the law.

11. EMINENT DOMAIN—*Damages—Market Value—Adaptability of Land to Certain Uses—Case at Bar.*—The compensation for private property taken for public use must be a full and perfect equivalent for the property taken. The language "full and exact equivalent" as applied to the case at bar means taking into consideration the adaptability of the land for railroad purposes as an element in estimating the market value thereof and not merely confining its use to an agricultural proposition. In other words, the cost of the grade work is not to be taken as a separate item of damage, but the inquiry should be, considering its availability for valuable uses, what is the property worth in the market.

12. EMINENT DOMAIN—*Damages—Uses of the Tract for all Purposes.*—In estimating damages for the taking of land it is necessary to consider the uses of the tract in question for all purposes, and certainly it would not be proper to disregard the particular use to which the owner had seen fit to devote it, for that would be to exclude, perhaps, the chief element of value.

13. EMINENT DOMAIN—*Improper Influence Exerted over Commissioners—Case at Bar.*—In the instant case, a proceeding for the condemnation of land, it was assigned as error that the railroad company exerted an improper influence in permitting the commissioners to ride without charge therefor upon its log train while engaged in the view of the premises. The company extended similar courtesies to the landowner and his counsel. From an examination of the evidence it could not be said that the act complained of was premeditated upon the part of the company and therefore should be held to avoid the report of the commissioners. While such indiscretions may not be penalized in all cases, they are not looked upon with favor, and litigants and counsel cannot be too careful in their conduct towards those who are the arbiters of their legal rights.

Error to a judgment of the Circuit Court of Buchanan county in eminent domain proceeding. Judgment for the petitioner. The landowner assigns error.

*Reversed.*

The opinion states the case.

*Chase, McCoy & Rose,* for the plaintiff in error.

*Williams & Combs, W. A. Daugherty,* and *Greever & Gillespie,* for the defendant in error.

CAMPBELL, J., delivered the opinion of the court.

The defendant in error filed its petition in the Circuit Court of Buchanan county for the purpose of condemning for its use lands of the plaintiff in error.

On the 3rd day of October, 1923, the company (as the defendant in error will hereafter be called) gave notice to the plaintiff in error that on the 15th day of October, 1923, it would apply to the judge of the circuit court, in vacation, for the appointment of commissioners to ascertain what would be a just compensation for the land proposed to be taken, and to award damages, etc.

The petition filed by the company conforms to the requirements of the statute in its allegations. On the day fixed in the notice, plaintiff in error appeared by counsel and filed his answer to the petition.

[1, 2] This answer specifically sets forth "that it is not true that petitioner has made a *bona fide* effort to agree with your respondent as to the purchase of the land sought to be condemned and cannot agree."

Section 4363, Code of 1919, provides: "No proceeding shall be taken to condemn land or other property, nor any interest therein, until a *bona fide,* but ineffectual;

effort has been made to acquire the same from the owner thereof by purchase, except where such consent cannot be obtained because of the incapacity of the owners or one or more of them, or because such owner is unknown or cannot with reasonable diligence be found within this State."

Without compelling a joinder of issue upon this denial the judge, over the protest and objection of the plaintiff in error, appointed the commissioners pursuant to the prayer of the petition and refused to hear any evidence on the question prior to the appointment of said commissioners.

This action constitutes the first assignment of error. Under the language of section 4363, which we hold to be mandatory, it was incumbent upon the judge, acting in vacation, to ascertain whether or not jurisdiction had been acquired of both the parties and the subject matter.

The language of the statute is plain; that no proceeding shall be taken to condemn land until a *bona fide* effort has been made to acquire the same by purchase. The reason for the existence of the statute is likewise plain.

[3, 4] A landowner should not be put to the trouble and possible expense of counsel fees upon the mere whim or caprice of the condemnor, when a *bona fide* effort to purchase his land would in all probability terminate the transaction. Without first determining the question of a *bona fide* offer having been made by the company, the judge was without jurisdiction to entertain the petition of the company, and hence without jurisdiction to appoint the commissioners.

In *Core* v. *Norfolk*, 99 Va. 191, 37 S. E. 845, Judge Buchanan, delivering the opinion of the court, said: "By section 1074 of that chapter (46 of Code) it is provided

that 'if * * * the council of a city * * * cannot agree on the terms of purchase with those entitled to lands wanted' for its purposes, it may institute condemnation proceedings in the proper courts. Under the provisions of that section, the council of the city of Norfolk had no authority to institute, and the court had no jurisdiction to entertain, any proceedings to condemn the lands wanted, until after the council had made an attempt to purchase them from the plaintiff in error, and the parties had been unable to agree upon terms of purchase. This is conceded by counsel for the defendant in error, but if it were not, it is well settled that such provisions are regarded as in the nature of conditions precedent, which are not only to be observed and complied with before the courts can exercise their compulsory powers to deprive the owner of his land, but the party instituting such proceedings must show affirmatively such compliance. Cooley on Con. Lim. (6th ed.), 648-9; Lewis on Eminent Domain, section 301; Mills on Eminent Domain, section 105. See *Charlottesville* v. *Maury*, 96 Va. 383, 386 [31 S. E. 520]; *Painter* v. *St. Clair*, 98 Va. 85 [34 S. E. 989]."

In *Painter* v. *St. Clair*, 98 Va. 88, 34 S. E. 989, it is held that statutes conferring the power of eminent domain are strictly construed and the authority conferred in such statutes must be carefully observed and followed.

In concluding the opinion in *Core* v. *Norfolk, supra*, Judge Buchanan further said: "It was the duty of the council, after determining to open and extend the street, to make a *bona fide* effort to agree upon terms of purchase with the plaintiff in error for the lands wanted. Having failed to do this, the corporation court was without jurisdiction, and should have sustained the objection of the plaintiff in error to the appointment of commissioners, and dismissed the proceedings."

In *Richmond* v. *Childrey*, 127 Va. 268, 103 S. E. 631, Judge Burks said: "The courts everywhere hold that acts conferring the power of eminent domain shall be strictly construed against the grant, and that one claiming the power must bring himself strictly within the grant, both as to the extent and manner of its exercise. As said in *Brewster* v. *Peru*, 180 Ill. 124, 128, 54 N. E. 233, 234, 'there must be a close, straightforward and honest compliance with every substantial requirement of the law.' The requirement of the law must be fulfilled whether reasonable or unreasonable. As said in *Carson* v. *City of Richmond*, 113 Va. 527, 529, 75 S. E. 119, 'the power conferred must be strictly construed and the manner of executing it carefully observed;' and in *Ches. & O. Ry. Co.* v. *Walker*, 100 Va. 69, 40 S. E. 633, 914, grants of power, especially the right of eminent domain, are to be strictly construed. To the same effect is *Painter* v. *St. Clair*, 98 Va. 85, 34 S. E. 989. These principles have been applied in cases too numerous to be cited."

[5] The judge, in the instant case, should have heard the evidence before appointing commissioners, and in the event the company failed to affirmatively show that it had made a *bona fide* effort to agree upon terms of purchase with the plaintiff in error, he should have dismissed the proceedings.

[6] The second assignment of error is that the company is neither a public service corporation nor an internal improvement company, and therefore not authorized by its charter to exercise the powers of eminent domain.

The allegation contained in the petition of the company that it was "authorized by its charter under the laws of the State of Virginia, for its uses and purposes, to condemn and otherwise acquire land and other prop-

erty or any interest or estate therein," is specifically denied in his answer by the plaintiff in error. This question was also reserved for decision by the judge until after the coming in of the report of the commissioners.

Without deciding whether or not this action on the part of the judge was error, we are of the opinion that the whole case on this point was fully developed by the evidence introduced upon the hearing on the exceptions to the Commissioner's report, and that the question involved in the second assignment of error should be disposed of on this writ of error.

The Big Sandy and Cumberland Railroad Company was chartered, prior to the creation of the State Corporation Commission, by an act of the General Assembly which became effective January 25, 1901 (Laws 1899-1900, chapter 175), and upon it, by said act, was conferred the power "to construct, operate and maintain a line of railroad of standard or narrow gauge, with single or double track, from some point on the line dividing the States of Virginia and Kentucky as may be deemed most convenient in the counties of Dickenson or Buchanan; thence by the most desirable and practical route through either of said counties and the additional counties of Tazewell and Russell, or any one or more of said counties, to the Clinch river * * * or to a connection with the Norfolk and Western Railroad, or any other railroad, at any point in any of said counties found hereafter to be desirable." Section 2. It was also expressly authorized "to acquire and own by purchase or lease any lands, quarries, mines, coal beds, standing timber, trees, lumber yards, tanneries, pulp and paper mills, furnaces, rolling mills, machine works, and wharves, and erect and operate, lease or sell, the same, in any of the counties through which its road may pass, * * and it shall have the power to construct,

maintain, and equip and operate such branch roads as the board of directors may from time to time determine upon, running from points on its main line in any direction, provided any such branch shall not exceed twenty miles in length." By an amendment granted at the same session of the General Assembly (Laws 1899-1900, chapter 791), the company was authorized as a *common carrier* to construct side tracks along its right of way, to furnish cars and transportation for coal, timber and other freight. In October, 1908, the charter of the company was amended by the State Corporation Commission, permitting it to extend its main line of railroad to Grundy, the county seat of Buchanan county.

Again, in November, 1913, the Corporation Commission granted an amendment to the charter of the company. This amendment was granted upon an application containing the following language: "Now, therefore, said Big Sandy and Cumberland Railroad Company hereby makes application, as provided in section 1105-b, clause 6, of the Code of 1904, * * * for an amendment of its charter."

It will be found, upon an examination of section 1105-b, clause 6, of the Code of 1904, that it is only applicable to amendments of charters of railroad companies, that is, public service and not private railroad companies. The testimony adduced by the company in support of its contention tends to show that the company began operating in 1901 as a common carrier of freight and passengers, and engaged in no other business; that its line of road extends into the States of West Virginia and Kentucky, that it is an interstate carrier, and as such has complied with the provisions of the Interstate Commerce Act (U. S. Comp. St. section 8563, *et seq.*); that it files with the district inspector monthly inspection reports; that it has complied with the safety

appliance act (U. S. Comp. St. sections 8605-8623);
that it runs daily passenger and freight trains between
Devon, West Virginia, and Grundy, Virginia, that it has
regular stations and depots at Devon, West Virginia,
Woodman, Kentucky, and Blackey, Hurley, Mathey,
and Grundy, Virginia, at which stations regular agents
are employed to sell tickets to the public and to receive
and ship freight and express; that it has filed with
the Interstate Commerce Commission its schedules or
freight rates; that in addition to the regular stations it
has flag stops at four other stations along its route; that
it files the annual reports which railroads are required
by law to file with the State Corporation Commission.

While neither the original charter nor any of the
amendments granted the Big Sandy and Cumberland
Railroad Company in terms confer upon it the power of
eminent domain, we have no hesitation in holding that
it comes within the provisions of the general law in force
at the time its charter was granted, which confers upon
internal improvement companies such powers. In addi-
tion thereto the legislature has by general law delegated
to railway companies the power of eminent domain.

By permitting two amendments to its charter the
company has been recognized as a railway company by
the State Corporation Commission. It has also been
recognized as a public service corporation by the Inter-
state Commerce Commission. Both by purchase and
condemnation it has heretofore acquired lands for its
uses and purposes.

It has submitted itself to the jurisdiction of the State
Corporation Commission and no effort has been put
forth by the State to test the provisions of its charter or
call in question its corporate existence.

There is no merit in this assignment of error as we are
of the opinion that the Big Sandy and Cumberland

Railroad Company is a railroad company vested with the power of eminent domain. The next ground of error alleged is that on the hearing of this case, on the 20th day of December, 1923, the plaintiff in error should have been, on his motion, granted a trial by a jury on the issues raised in this case.

There is no merit in this assignment.

[7] The procedure to be followed in the condemnation of land is purely statutory. That the statute provides that a commission, instead of a jury, shall ascertain what will be a just compensation for the land taken or damaged does not make it amenable to the objection that it denies the landowner a trial by jury and is therefore unconstitutional.

There is nothing in the constitution which suggests or requires a trial by jury.

The only inhibition upon the power of the General Assembly in this regard is that "it shall not enact any law whereby private property shall be taken or damaged for public uses, without just compensation." Section 58 of the Constitution.

That the legislature may provide a trial by a jury for the assessment of damages in certain cases is seen by reference to *Snidow* v. *Board of Supervisors*, 123 Va. 009, 96 S. E. 810. That it is not directed to do so by the Constitution is held in *Wilburn* v. *Raines*, 111 Va. 534, 68 S. E. 993. Judge Whittle, delivering the opinion of the court, said: "The power of eminent domain is an incident to sovereignty and is vested solely in the legislature, subject to constitutional restriction. It may exercise the right directly, or indirectly, through such agencies and in such manner and to such extent as it pleases, subject to the constitutional provision that private property shall not be taken for public uses except upon making just compensation. Due process of law in

this connection only requires that the power shall be exercised in subordination to established principles."

In *Richmond* v. *Childrey, supra*, it was also said: "The right to take or damage private property for a public use is wholly statutory. It is in derogation of the common law, seriously affects the rights of private citizens, and can only be exercised for the purpose, to the extent, and in the manner provided by law. It is an incident of sovereignty, not conferred but limited by the Constitution. The power to exercise the right resides in the legislature, as the representative of the people, but may be delegated by it to appropriate subordinate agencies. In making such delegation, the power of the legislature is without limit except so far as restrained by the Constitution. It may prescribe what shall be done and how, and may designate the order in which the various steps are to be taken. It may place its own limitations on the extent to which the power will be granted and the manner of its exercise, and when it does so its mandate must be obeyed. It is not for the courts to seek for reasons for restraints upon the exercise of the power. The powers conferred cannot be enlarged nor the restraints imposed minimized by construction of the courts. The legislature is the sole judge of the propriety of granting the power, and the extent and manner of its exercise. Even in prescribing the manner in which the power shall be exercised, its action may be founded on good reasons, or bad reasons, or it may be without reason. It may be arbitrary if it chooses, without accountability to any one save the public. With this the courts have no concern, nor can they refuse to enforce restraints simply because they regard them as unreasonable, or are unable to ascertain what, if any, reason actuated the legislature in imposing them. 5 Dillon (5th ed.), sections 1024, 1040, 1041; Cooley's Const

Lim. (7th ed.), 760-63; 2 Lewis' Em. Dom. (3d ed.), section 615."

[8] The following assignments of error will next be considered:

. (a) The commissioners did not allow plaintiff in error anything for bridges, trestles, cross ties and steel rails, now upon the lands sought to be condemned.

(b) The commissioners did not allow plaintiff in error anything for the grade work or railroad bed now upon the land sought to be taken.

It appears in evidence that the company at the time it instituted the condemnation proceedings was operating a railroad over the lands sought to be condemned under two deeds of lease from plaintiff in error to W. M. Ritter Lumber Company, which were assigned by the lumber company to the defendant in error.

Under the terms of the deed, dated April 26, 1909, it appears that the lessee or its assigns shall have "the right to construct, operate and maintain any and all needful roads, tram roads, railroads, bridges, chutes, slides, hoists, engines, and any other improvements and fixtures of whatsoever nature or kind, which the said party of the second part, its successors or assigns, may desire to erect and maintain upon said land, with the right to remove any and all of said improvements and fixtures at will, except houses and camps."

As the lessee reserved the right to remove the fixtures they were not proper elements to be taken into consideration by the commissioners in awarding damages for the land taken, and this assignment is without merit.

[9-11] (b) This assignment of error is well founded.

It appears from affidavits filed by two of the commissioners that in their assessment of the damages they did not take into consideration the value of the grade work, such as cuts and fills and roadbed.

Regardless of the fact that the grade work was done by the company or its predecessor, the plaintiff in error is the owner thereof and the company ceased to have any control or dominion over the same at the date of the expiration of the lease.

The trial court, in passing upon this question, states: "I consider the rule to be, in assessing damages, not the uses it is possible to make of the land shall be considered by the commissioners, not what they are using it for now, but its market value.    That is the amount proper to be paid.    *    *    *    This property, steel rails, ties, etc., belongs to the lessee.    The lease had not been terminated.    *    *    *    otherwise, I think the landowner is entitled to the value of his land."

We cannot subscribe to this statement of the law. The Constitution of the State provides that the General Assembly shall not "enact any law whereby private property shall be taken or damaged for public uses, without just compensation."    The word "damaged" appears for the first time in the organic law proclaimed by the Constitutional Convention of 1901-02.

The provision in the Federal Constitution in regard to the taking of private property for public use, is found in the fifth amendment thereto and which is as follows: "Nor shall private property be taken for public use without just compensation."

In construing this language in *Monongahela Navigation Co.* v. *United States*, 148 U. S. 326, 13 S. Ct. 626, 37 L. Ed. 463, Mr. Justice Brewer said: "The noun 'compensation,' standing by itself, carries the idea of an equivalent.    Thus we speak of damages by way of compensation, or compensatory damages, as distinguished from punitive or exemplary damages, the former being the equivalent for the injury done, and the latter imposed by way of punishment.    So that if the adjective

'just' had been omitted, and the provision was simply that property should not be taken without compensation, the natural import of the language would be that the compensation should be the equivalent of the property. And this is made emphatic by the adjective 'just.' There can, in view of the combination of those two words, be no doubt that the compensation must be a full and perfect equivalent for the property taken. And this just compensation, it will be noticed, is for the property and not to the owner. Every other clause in this fifth amendment is personal. No person shall be held to answer for a capital, or otherwise infamous crime," etc.

"Instead of continuing that form of statement, and saying that no person shall be deprived of his property without just compensation, the personal is left out, and the 'just compensation' is to be a full equivalent for the property taken. This excludes the taking into account, as an element in the compensation, any supposed benefit that the owner may receive in common with all from the public uses to which his private property is appropriated, and leaves it, to stand as a declaration, that no private property shall be appropriated to public uses unless a full and exact equivalent for it be returned to the owner." In *Richmond P. & C. R. Co.* v. *Chamblin*, 100 Va. 405, 41 S. E. 751, Judge Keith cites with approval the *Monongahela Case* and says: "In *Monongahela Navigation Co.* v. *United States*, 148 U. S. 312 [13 S. Ct. 622, 37 L. Ed. 463], it was held that the compensation for private property taken for public use must be a full and perfect equivalent for the property taken. That case arose under a federal law, but the same measure of compensation is, we think, proper under the provisions of our Constitution."

The language "full and exact equivalent" as applied

to the case at bar means taking into consideration the adaptability of the land for railroad purposes as an element in estimating the market value thereof and not merely confining its use to an agricultural proposition. In other words, the cost of the grade work is not to be taken as a separate item of damage, but the inquiry should be, considering its availability for valuable uses, what is the property worth in the market.

In *Richmond P. & C. R. Co. v. Chamblin*, 100 Va. 405, 41 S. E. 751, the rule is thus stated: "In determining the value of land appropriated for public purposes the inquiry must be, what is the property worth in the market from its availability for valuable uses, both now and in the future," citing *Boom Co. v. Patterson*, 98 U. S. 403, 25 L. Ed. 206. See also *Appalachian Power Co. v. Johnson*, 137 Va. 12, 119 S. E. 253.

It appears in this case that the plaintiff in error is possessed of large means; that the railroad in question leads to the very heart of valuable coal properties owned by him; that one of the inducements for the leases being entered into was that plaintiff in error could construct by reason of the roadbed a railroad to his properties at the expiration of the lease. This element should have been considered by the commissioners.

[12] In *Richmond P. & C. R. Co. v. Chamblin, supra,* in dealing with a similar question, Judge Keith says: "* * * it is necessary to consider the uses of the tract in question for all purposes, and certainly it would not be proper to disregard the particular use to which the owner had seen fit to devote it, for that would be to exclude, perhaps, the chief element of value."

[13] The next assignment of error relates to the alleged improper influence exerted by the company in permitting the commissioners to ride without charge therefor upon its log train while engaged in the view of the premises. After a careful examination of the evidence

upon this exception to the commissioner's report, we cannot say that the act complained of was premeditated upon the part of the company and therefore should be held to avoid the report of the commissioners.

In this case the company extended similar courtesies to the plaintiff in error and to counsel.

While such indiscretions may not be penalized in all cases, they are not looked upon with favor, and litigants and counsel cannot be too careful in their conduct towards those who are the arbiters of their legal rights.

What was said by Judge Sims in *New River R. R. Co. v. Honaker*, 119 Va. 641, 89 S. E. 960, Ann. Cas. 1917C, 132, we repeat with affirming emphasis: "For reasons of public policy, commissioners, in condemnation proceedings, should be kept free from every suspicion of influence by any party to the litigation, and their award will be set aside where it appears, that, pending the discharge of their duties, any of them were treated, fed and entertained by any one having an interest in the case, his agent or attorney, without regard to its actual influence on the award. The same rule applies to the award of the commissioners as to the verdict of a jury under similar conditions."

See *Va. Western Power Co. v. Kessinger*, 122 Va. 135, 94 S. E. 186.

The remaining assignments of error relate to the amendment of the petition over the objection of plaintiff in error and the alleged failure of the commission to award damages to the adjacent land of plaintiff in error.

As these questions are not likely to arise in the future, it is unnecessary to consider them.

For the errors committed, the judgment of the trial court must be reversed and this court will enter an order dismissing the petition of the Big Sandy and Cumberland Railroad Company.

*Reversed.*