# Richmond.

## NORFOLK AND WESTERN RAILWAY COMPANY v. VIRGINIAN RAILWAY COMPANY.

### January 13, 1910.

### Absent, Buchanan, J.

1. EMINENT DOMAIN—*Railroads—Crossing Each Other—Regulation—Code, Sec. 1294b, Clause 3.*—The right of one railroad company to cross the track of another is specifically given, and the terms and conditions under which the right to cross is to be made effectual are prescribed by paragraph 3 of section 1294b of the Code. This paragraph is clear and unambiguous in its terms, and deals fully and completely with the subject. It was enacted several months after paragraph 52 of section 1105e of the Code, which relates to the condemnation of the fee, and while the two paragraphs must be construed so as to harmonize, if possible, yet if there be any repugnancy between them, the general must yield to the specific, and the earlier to the later expression of the legislative will.

2. EMINENT DOMAIN—*Railroads—Crossing Each Other—Compensation—Due Process—Equal Protection—Impairment of Contract.*—An order in a condemnation proceeding, where one railroad company is seeking to cross the track of another, which directs the commissioners appointed to ascertain the proper compensation for damages, including the easement of crossing, which should be paid by the crossing company, is sufficiently broad to embrace all subjects of compensation arising out of the crossing of the right of way which is crossed; and the tribunal provided by the statutes of this State in such case, and the proceedings before it authorized by law, constitute due process of law, and the taking of property by such method cannot be said to deny the equal protection of the laws, nor to constitute the impairment of the obligation of any contract between the State and the company whose right of way is crossed as evidence by its charter and the charters of its predecessors in title.

3. POWERS GIVEN TO SEVERAL—*Majority to Act—Common Law Rule—Statutes.*—At common law, where several persons are authorized

to do any act of a public nature they must all deliberate, though a majority may decide, and the common law is not to be considered as altered or changed by statute unless the legislative intent is plainly manifested.

4. Eminent Domain—*Commissioners—Power of Majority—Disagreement—Statutory Rule of-Construction.*—Where five commissioners appointed in condemnation proceedings, any three or more of whom may act, are all duly sworn and act, a report concurred in by four of them is all that is necessary to enable the court to take action and proceed with the case. The disagreement of the commissioners referred to in paragraph 10 of section 1105f of. the Code, when read in connection with paragraph 6 of that section, has reference to a failure to agree on the part of that number of commissioners who are authorized to make a report. If there were any doubt about this construction, it is set at rest by paragraph 3 of section 5 of the Code, declaring that "words purporting to give authority to three or more public officers or other persons, shall be construed as giving such authority to a majority of such officers or other persons, unless it shall be otherwise expressly declared in the law giving the authority."

5. Eminent Domain—*Inadequate Damages—Case at Bar.*—The sum awarded as damages by the commissioners in this cause is not so inadequate as to justify this court in reversing the judgment of the trial court for that cause only.

6. Eminent Domain—*Admissions Not Laid Before Commissioners—Exceptions to Report.*—An extract from the brief of counsel of a party, in the nature of an admission of the damages for which his client is liable, and which was filed in another controversy between the client and the present defendant, cannot be filed for the first time on the hearing of exceptions to the report of the commissioners in a condemnation proceeding. If the extract was of any probative value it should have been brought to the attention of the commissioners while they were engaged in ascertaining the damages to be awarded.

Error to a judgment of the Circuit Court of Norfolk county in a condemnation proceeding. Judgment for the petitioner. Defendant assigns error.

*Affirmed.*

The petition for the appointment of commissioners was in the following words and figures:

## *Petition.*

"To the Hon. Wm. N. Portlock, Judge of the Circuit Court of
Norfolk county:

"The Tidewated Railway Company, a corporation duly ex-
isting under the laws of the State of Virginia, respectfully
shows unto your honor the following case:

"First. That it has duly located the main line of its railroad
from the West Virginia line through Virginia, to a point in
Norfolk county on the Eastern branch of the Elizabeth river,
and said line, as so located, crosses the line of the Norfolk and
Western Railway Company in the county of Norfolk between
the Eastern and Southern branches of the Elizabeth river near
what is known as South Norfolk, and as more definitely here-
inafter described, and that it is constructing its whole line from
West Virginia to said Eastern branch, and has graded and is
ready to lay its rails on each side of the proposed crossing.

"Second. That on May 23, 1905, Raymond Dupuy, general
manager of the Tidewater Railway Company, submitted plans,
specifications, appliances and methods of operation for the Tide-
water Railway Company's crossing of the Norfolk and Western
Railway near South Norfolk, to N. D. Maher, general manager
of the Norfolk and Western Railway Company. A duly cer-
tified copy of the notice submitting said plans, etc., and a duly
certified copy of the plans, specifications, appliances and meth-
ods of operation are hereto annexed, marked 'Exhibit A,' and
prayed to be taken as a part hereof.

"Third. The Norfolk and Western Railway Company ap-
plied to the State Corporation Commission on the 20th day of
June, 1905, to inquire into the necessity for such crossing and
the propriety of the proposed location, in accordance with the
statute in such case made and provided.

"Fourth. The State Corporation Commission on the 2d day
of August, 1905, entered an order allowing the Tidewater Rail-
way Company to cross the Norfolk and Western Railway at the

point indicated in the said notice, dated the 23d day of May, 1905, above referred to, said place of crossing being described in said order as follows:

" 'Near South Norfolk, in Norfolk county, Virginia, at station 623 plus 86 of the Tidewater Railway, as located and about 800 feet south of the tower at the beginning of the double track of the Norfolk and Western Railway Company running towards Norfolk, the said crossing to be on the grade of the Norfolk and Western Railway at the point of crossing.' A duly certified copy of which order of the State Corporation Commission, together with a duly certified copy of the memorandum of conclusions reached by the Commission, are hereto annexed, marked 'Exhibit B,' and prayed to be taken as a part hereof.

"Fifth. The Norfolk and Western Railway Company appealed to the Supreme Court of Appeals of Virginia from the order of the State Corporation Commission, and the said Court of Appeals affirmed the order of the State Corporation Commission, by its order entered on the 1st day of March, 1906, and certified the same to the State Corporation Commission, a certified copy of which order of the Court of Appeals is hereto annexed, marked 'Exhibit C,' and prayed to be taken as a part hereof.

"Sixth. Your petitioner avers that, by the proceedings aforesaid, it has acquired a right or easement of crossing with its track the track and right of way of the Norfolk and Western Railway Company at the point aforesaid, the said crossing to be constructed, maintained and operated by your petitioner in accordance with the said order of the Corporation Commission, subject only to the payment to the Norfolk and Western Railway Company of proper compensation for damages for said crossing, as provided by the statute in such case made and provided.

"Seventh. The said crossing is wanted by your petitioner for its uses and purposes as a railroad corporation, and it proposes to construct, maintain and operate the said crossing under

the plans and specifications, with the appliances and according to the methods required by the said order of the Corporation Commission. Your petitioner cannot agree with the Norfolk and Western Railway Company on the amount of compensation the last mentioned company is entitled to on account of said crossing. Your petitioner has offered to pay said Norfolk and Western Railway Company the sum of $———, which it has refused to accept. Your petitioner therefore, in accordance with the statute in such case made and provided, has instituted these proceedings in order that the proper compensation for damages to which the said Norfolk and Western Railway Company is entitled may be determined as provided by law. A plat of the survey, with profile and description of the crossing, and memorandum showing the name and principal office of the owner of the land covered by the crossing, is attached hereto and herewith filed in the office of the clerk of the Circuit Court of Norfolk county and prayed to be taken as a part of this petition.

"Your petitioner therefore prays that five disinterested freeholders, residents in Norfolk county, be appointed by the court for the purpose of ascertaining the proper compensation for damages, including compensation for the easement of crossing, which should be paid by the Tidewater Railway Company in accordance with the statute in such case made and provided."

The following sections of the Code are referred to in the opinion of the court:

Sec. 1105e, par. 52, "No corporation shall take by condemnation proceedings any property belonging to any other corporation possessing the power of eminent domain, unless, after hearing all parties in interest, the State Corporation Commission shall certify that a public necessity, or that an essential public convenience shall so require, and shall give its permission thereto; and in no event shall one corporation take by condemnation proceedings any property owned by and essential to the purposes of another corporation possessing the power of eminent domain."

Sec. 1294b, par. 3.  "If any railroad, canal, turnpike, or other public service corporation deems it necessary in the construction of its works to cross any other railroad, canal, turnpike, or works of any other public service corporation, or any county road, it may do so: provided, such crossing shall be so located, constructed, and operated as not to impair, impede, or obstruct in any material degree, the works and operations of the railroad, canal, turnpike, or other works, to be crossed: and provided, such crossing shall be supported by such permanent and proper structures and fixtures, and shall be controlled by such customary and approved appliances, methods, and regulations as will best secure the safe passage and transportation of persons and property along such crossing, and will not be injurious to the works of the company to be crossed.   The cost of such crossings, their appliances and apparatus and of the repair and operation of the same, shall be borne by the party desiring to make the crossing.   Before the work is commenced upon the crossing the president or general managing officer of the company which proposes to cross the works of another company shall submit plans, specifications, appliances, and methods of operation to the president or other general officer of the latter company; and if the said plans and specifications are not accepted within thirty days after the same have been delivered to the president, or any general officer of the company whose works are to be crossed, the president or general managing officer of the first-named company may then proceed with the construction and operation of the said crossing under the plans and specifications, and with the appliances and methods, so submitted: provided, however, the president or general managing officer of the company whose works are to be crossed may, within fifteen days from the date of the service of such notice, apply to the State Corporation Commission to inquire into the necessity for such crossing, and the propriety of the proposed location, and all matters pertaining to its construction and operation; and thereupon, within thirty days from the date of the service of the first notice aforesaid the State

Corporation Commission in its discretion may, by notice served upon both companies, suspend work on said crossing for such reasonable time, prescribed in said notice, as it may deem necessary to make such inquiry.   The said State Corporation Commission may, in its discretion, where railroads or canals are to be crossed by other railroads or canals, employ expert engineers, at a cost not exceeding five hundred dollars, to be paid equally by both companies, who shall, with the State Corporation Commission, or some member thereof, or such person as the said commission may designate, examine the location, plans, specifications, appliances, and methods proposed to be employed, and shall hear any objections and consider any modifications that the company whose line is to be crossed desires to offer, and within such time as the State Corporation [Commission] may fix shall reject, approve, or modify the said plans and specifications, which shall, unless an appeal be taken to the Supreme Court of Appeals within thirty days from the date of the final order of said commission, be final and binding on both companies.   If any such company desires that the course of any other railroad, turnpike, canal, or other works shall be changed to avoid the necessity of any crossing, or frequent crossings of the same, the change may be made in such manner and on such terms as may be agreed on by the company desiring the change, and the company, person, or county owning or having charge of the works to be affected by such change.   If any such crossing or change as is provided in this section cause damage to the works of any company, or of any county, or to the owner or occupant of any lands, the company exercising the privileges herein granted shall make proper compensation for such damage.   Upon the failure of the company desiring to make the crossing to receive notice of the acceptance of the said plans and specifications within thirty days from giving the notice aforesaid, or upon the adoption of the plans, appliances, and methods by the State Corporation Commission, or if an appeal be taken as aforesaid, upon the adoption by the Supreme Court of Ap-

peals of the plans, appliances, and methods, and the payment of the proper compensation for damages by the company desiring to cross the works of another company, such damages to be ascertained according to the laws regulating the exercise of the right of eminent domain, work may be commenced immediately, and no order shall be made, and no injunction awarded by any court or judge to stay the proceedings or prosecution of the work; but any county road, or stream, or water-course, may be altered by any such company for the purposes aforesaid whenever it shall have made an equally convenient road or waterway in lieu thereof, the said company having first obtained the consent of the board of supervisors of the county, to the alteration of any road or highway."

*Hughes & Little,* and *Munford, Hunton, Williams & Anderson, Lucian H. Cocke,* and *Joseph I. Doran,* for the plaintiff in error.

*Loyall, Taylor & White* and *Brown, Jackson & Knight,* for the defendant in error.

Keith, P., delivered the opinion of the court.

The Norfolk and Western Railway Company instituted a proceeding against the Tidewater Railway Company, which is now the Virginian Railway Company, before the State Corporation Commission, to inquire into the necessity for and propriety of the location of a crossing which the latter company desired to make over the works of the former; the principal contention on the part of the Norfolk and Western Railway Company being that the Tidewater Railway Company should not be permitted to cross what is known as the "throat" of its railroad yards at grade, but should be required to construct an overhead crossing. The Corporation Commission was of opinion that, the topography of the situation and all the other facts bearing upon the

subject being considered, it would be unreasonable to require an overhead crossing, and so decided.    From that order an appeal was taken to this court, where it was affirmed by an opinion handed down on March 1, 1906.    See *N. & W. Ry. Co.* v. *Tide-Water Ry. Co.,* 105 Va. 129, 52 S. E. 852.

The only question involved in that case was as to the necessity for and the propriety of the crossing which the Tidewater Railway Company proposed to make, and nothing was decided and nothing could have been decided except to "determine the necessity for the proposed crossing and the place where and the manner in which it should be made."    "Until those questions were finally settled," said Judge Buchanan in his opinion, "no question of taking property, with or without due process of law, or of condemning the lands of the road whose works were to be crossed, or of compensation therefor, could arise."

Shortly after that case was disposed of by the judgment of this court, the Tidewater Railway Company filed its petition before the judge of the Circuit Court of Norfolk county, in which it states that it had, on the 23d of May, 1905, through its general manager, submitted plans, specifications, appliances and methods of operation for its crossing of the Norfolk and Western Railway near South Norfolk to the general manager of the Norfolk and Western Railway Company.    The petition then recites in brief the proceeding instituted by the Norfolk and Western Railway Company before the State Corporation Commission, to which we have already referred, and the order of the commission subsequently affirmed by this court, authorizing the crossing to be made at a point "near South Norfolk, in Norfolk county, Virginia, at station 623 plus 86 of the Tidewater railway, as located, and about 800 feet south of the tower at the beginning of the double track of the Norfolk and Western Railway Company running towards Norfolk, the said crossing to be on the grade of the Norfolk and Western railway at the point of crossing."    The petition then shows that the crossing is wanted by the Tidewater Railway Company for its

uses and purposes as a railroad corporation, and that it proposes to construct, maintain and operate the crossing under the plans and specifications, with the appliances and according to the methods required by the order of the State Corporation Commission; that it has been unable to agree with the Norfolk and Western Railway Company upon the amount of compensation to which it is entitled on account of said crossing; and that the petitioner, therefore, in accordance with the statute in such case made and provided, has instituted these proceedings in order that the proper compensation for damages to which the Norfolk and Western Railway Company is entitled may be determined as provided by law. The petitioner, therefore, prays that five disinterested freeholders, residents in Norfolk county, be appointed by the court for the purpose of ascertaining the proper compensation for damages, including compensation for the easement of crossing, which should be paid by the Tidewater Railway Company in accordance with the statute in such case made and provided." Along with this petition are filed plats and surveys, and a statement showing the specifications, appliances and methods of operation of the proposed crossing.

The Norfolk and Western Railway Company appeared and filed its demurrer to this petition, and a motion to quash—"First, because the petition does not aver that petitioner has applied to the State Corporation Commission for permission to take by condemnation proceedings any of this respondent's property, or that the said commission has certified that a public necessity or an essential public convenience so required; second, because until the said State Corporation Commission has so certified, the petitioner cannot condemn the easement of crossing the property of this respondent; third, because there is nothing in said petition to show that the property owned by respondent, so proposed to be taken, is not essential to its purposes; fourth, because the statutes of Virginia in relation to the crossing of one railroad by another, if intended to authorize a mere assessment of incidental damages and not a payment for the property of respond-

ent proposed to be actually occupied and used by petitioner, are unconstitutional and void (1) as taking private property without just compensation; (2) as depriving respondent of its property without due process of law; (3) as denying to respondent the equal protection of the laws; (4) as impairing the obligation of the contract between the State and respondent, evidenced by its charter and the charters of its predecessors in title; (5) because the petitioner does not show the character or amount of interest or estate intended to be taken, or for which damages are to be assessed."

The court overruled the demurer and the motion to quash, and the Norfolk and Western Railway Company was permitted to file its answer; and thereupon the court appointed five commissioners to ascertain "the proper compensation for damages, including the easement of crossing, which should be paid by the Tidewater Railway Company on account of its crossing the Norfolk and Western Railway Company."

All five of the commissioners acted, and a report was returned, in which four of them concurred, that the sum of $1,000 is a proper compensation for the easement of crossing, and $2,500 is a proper compensation for damages to the works of the Norfolk and Western Railway Company on account of the Tidewater Railway Company crossing the said Norfolk and Western Railway Company, as set forth in these proceedings.

The Norfolk and Western Railway Company excepted to this report as follows: "It appears from the records in this case that all five commissioners were sworn, and that all five took part in the deliberations throughout, and that only four of the commissioners signed said report, and that W. B. Carney, the other commissioner, signed a paper reporting his inability to agree with the other commissioners; hence the said Norfolk and Western Railway Company excepts on the ground that the said report is no report at all, and that it shows a disagreement of the commissioners, consent of all being necessary to a report; and that the two papers taken together are, in legal effect, nothing

more than a report of disagreement; the estimate of dam-ages by four of the five commissioners being mere surplusage and unauthorized.   Second, in that the said report, if a report, does not properly and accurately describe the exact amount of land of the Norfolk and Western Railway Company proposed to be occupied by the Tidewater Railway Company in its ease-ment of crossing, neither the length nor breadth of the land so proposed to be occupied being given and no adequate description thereof being given.   Third, in that the amount of damages awarded by the report, if a report, is grossly inadequate and unfair, it having been shown by the evidence the damages from delays incident to the stopping of the Norfolk and Western trains, in loss of time, in wear and tear of machinery, in in-creased use of train supplies and other delays and inconve-niences, and from the injury to the yard of this exceptant were very large, amounting approximately to two hundred and sixty-five thousand dollars."

All of these exceptions were overruled by the circuit court and a judgment entered confirming the report, to which a writ of error was awarded.

The first error assigned is that the court erred in overruling the demurrer and motion to quash, and in not sustaining each of the five grounds therein specified.

Plaintiff in error relies in support of its demurrer upon para-graph 52 of section 1105e of the Code, which provides, that "No corporation shall take by condemnation proceedings any property belonging to any other corporation possessing the power of eminent domain, unless, after hearing all parties in interest, the State Corporation Commission shall certify that a public necessity or that an essential public convenience shall so require, and shall give its permission thereto.   .   .   ."

On behalf of the defendant in error it is contended that this question is controlled by paragraph 3 of section 1294b of the Code; and that view we think rightly prevailed in the circuit court.   The two sections are not dealing with precisely the same

subject.  Paragraph 52 of section 1105e has reference to a condemnation proceeding under which, by force of the power of eminent domain, it is intended to condemn and take a fee simple interest in property belonging to another corporation.  If the contention of the Norfolk and Western Railway Company be true in all its parts, then there would be no power anywhere to grant to one railroad corporation possessing the power of eminent domain the right to cross the track of another corporation possessing the same power.

The contention of the plaintiff in error is that the crossing of the track of one railroad company by the track of another railroad company is the taking of property; and in a sense that is doubtless true—it is taking the easement of the right to cross, and for that taking just compensation must be made.  But if it were a taking of property in the sense that it was a condemnation of a fee simple interest in the roadbed and track of the road to be crossed at the point of crossing, then it would be expressly prohibited by the second clause of the paragraph under consideration, which provides that "in no event shall one corporation take by condemnation proceedings any property owned by and essential to the purposes of another corporation possessing the power of eminent domain."  The railroad bed and its tracks, in all their parts, come strictly within the terms of this inhibition, as property owned by and essential to the purposes of a railroad corporation.  To harmonize the two statutes, therefore, it is apparent that paragraph 52 cannot be held to relate to or control the crossing of the tracks of one railroad company by another.

Paragraph 3 of section 1294b provides that "if any railroad, canal, turnpike or other public service corporation deems it necessary in the construction of its works to cross any other railroad, canal, turnpike or works of any other public service corporation, or any county road, it may do so.  . ."  Here is an absolute right given; and the paragraph then proceeds with great care and caution to provide the terms and conditions upon

which the right to cross is to be made effectual. We need not discuss this section further, for this branch of the case has been sufficiently covered by the proceedings before the Corporation Commission, which have been already adverted to.

It is proper to remark before leaving this branch of the case that the conclusion at which we have arrived by a consideration of the terms of paragraph 52 is greatly strengthened by the fact that it was passed May 21, 1903, while paragraph 3 of section 1294b became a law some months thereafter; that the latter act is clear and unambiguous in its terms, deals fully and completely with the subject; and if there be any repugnancy between the two, the general must yield to the specific, and the earlier to the later expression of legislative will.

After treating the subject with much detail, paragraph 3 of section 1294-b provides for "proper compensation for damages by the company desiring to cross the works of another company, such damages to be ascertained according to the laws regulating the exercise of the right of eminent domain."

The commissioners appointed by the court were directed to ascertain the proper compensation for damages, including the easement of crossing, which should be paid by the Tidewater Railway Company on account of its crossing the Norfolk and Western Railway Company, as set forth in the order of the State Corporation Commission; and in obedience to that order the commissioners reported and the court allowed the sum of $3,500. The order of the court was sufficiently broad to embrace all just subjects of compensation arising out of the crossing of the right of way of the Norfolk and Western Railway Company, and we think the tribunal provided and the proceedings before it authorized by law constitute due process of law, and that to take property by such method cannot be said to deny the equal protection of the laws, nor to constitute the impairment of the obligation of any contract between the State and the Norfolk and Western Railway Company as evidenced by its charter and the charters of its predecessors in title.

We shall, therefore, proceed to inquire, first, whether the report of four out of five commissioners who may be appointed, and all of whom have acted, is such a report as is contemplated by our statute; and, second, whether or not the compensation allowed is to be deemed so grossly inadequate as to justify this court in setting it aside.

The commissioners in this case were appointed pursuant to the terms of paragraph 6 of section 1105f of the Code, which declares that when the provisions of the preceding sections (which need not be specifically mentioned here) have been complied with, the court of the county or corporation in which the land or other property sought to be condemned, or the greater part thereof, lies "shall appoint five disinterested freeholders, resident in such county or city, any three or more of whom may act, for the purpose of ascertaining a just compensation for such lands or other property, or for such interest or estate therein, and awarding the damages, if any, resulting to the adjacent or other property of the owner, or to the property of any other person, beyond the peculiar benefits that will accrue to such properties, respectively, from the construction and operation of the company's work. . . ."

Paragraph 3 of section 5 of the Code provides that "words purporting to give authority to three or more public officers or other persons, shall be construed as giving such authority to a majority of such officers or other persons, unless it shall be otherwise expressly declared in the law giving the authority."

The contention of plaintiff in error is that, in this case, as five commissioners were appointed, all of whom were duly sworn and acted as commissioners, no lawful report could be made unless all five of them united in the report; and that as one of them dissented or disagreed there was in contemplation of law no report upon which the court could take action.

It is conceded that the common law upon the subject is correctly stated in section 419 of the second edition of Lewis on Em. Domain. "It is a general rule of law that where several

. persons are authorized to do any act of a public nature they must all deliberate, though a majority may decide. In the absence of any statutory provisions controlling the matter, it follows that commissioners and similar bodies must meet and deliberate together concerning the matters submitted to their decision, and that, having done so, a decision of the majority will be valid and binding."

Leaving out of view, for a moment, the statute on construction above quoted, it has been frequently decided by this court, and may be taken as established law with us, that the common law is not to be considered as altered or changed by statute unless the legislative intent be plainly manifested (*Millhiser* v. *Gallego Mills Co.,* 101 Va. 579, 44 S. E. 760), and counsel for plaintiff in error contend that reading all of the statutes upon the subject together it is plainly made to appear that the law of this State contemplates a unanimous report from all of the commissioners who acted.

Much reliance is placed upon paragraph 10 of section 1105f, which provides: "If, however, good cause be shown against the report, or if the commissioners report their disagreement, or if they fail to report within a reasonable time, not to exceed ninety days, the court may, without further notice, as often as seems to it proper, appoint other commissioners, and the matter may be proceeded in as before prescribed." ·

It is earnestly argued that if four of the commissioners agree upon a report, and the fifth does not agree with the four, the disagreement contemplated by paragraph 10 exists, and the court must appoint other commissioners.

We are of opinion that the disagreement referred to in this paragraph, read in connection with paragraph 6, has reference to a failure to agree on the part of that number of commissioners who are authorized to make a report. That would seem to be the natural conclusion, construing these statutes and the rule of the common law upon the subject; but when we come to apply the rule of construction prescribed by paragraph 3 of section 5

already quoted, all doubt would seem to be removed.   The law giving the authority here is paragraph 6 of section 1105f, which provides for the appointment of five disinterested free-holders, any three or more of whom may act, and that, according to the statutory rule of construction, confers the power upon a majority of those acting, unless it shall be otherwise expressly declared in the law giving the authority.   Now "expressly" means "in direct terms" (Webster's Dict.), and there is no room to argue that section 1105, paragraph 6, expressly, or in direct terms, requires unanimity upon the part of all of the commissioners appointed and acting.   Ingenious argument will not do. Decisions rendered in other jurisdictions upon statutes more or less similar, but not identical in terms with our own, cannot control the plain and unambiguous terms of our statute law.

We are of opinion that this assignment of error cannot be maintained.

We do not think it necessary to add to what has already been said in dealing with the demurrer and motion to quash, with respect to the exception to the report, that it does not describe with sufficient accuracy "the amount of land of the Norfolk and Western Railway Company proposed to be occupied by the Tide-water Railway Company in its easement of crossing, neither the length nor breadth of the land so proposed to be occupied being given and no adequate description thereof being given."

We are further of opinion that in the absence of some error of law, and confining ourselves to the consideration of the facts bearing upon the subject of compensation, we are unable to say that the sum awarded by the commissioners is so inadequate as to justify us in reversing the judgment of the circuit court. This position, we understand, is not seriously controverted by counsel for plaintiff in error, but their contention is that the court did commit error for which its judgment should be reversed in the following particulars, as set forth in bill of exception No. 2 :

"Be it remembered that on the first hearing of the exceptions

filed by the Norfolk and Western Railway Company to the paper signed by four of the five commissioners to assess damages, and purporting to be an assessment of damages, said hearing having occurred on November 20, 1906, counsel for the Norfolk and Western Railway Company offered in evidence two extracts from the printed brief of the Tidewater Railway Company before the Corporation Commission at the hearing of the aforesaid commission on the subject of the character of the crossing, whether overhead or otherwise, which extracts are in the following language:

1. " 'The extra expense, if any, of such change of the yard, if the order of this commission should necessitate such change, the Tidewater Company would, under the statute, have to pay and would cheerfully pay; and

2. " 'And the Tidewater Railway Company expects to, and must pay all damages resulting from a grade crossing, and the Norfolk and Western Railway Company will be thereby made whole.' "

It will be observed that these two extracts, whatever may be their probative value, were not offered in evidence before the commissioners appointed to ascertain the damages, but were sought to be introduced before the circuit court upon the first hearing of the exceptions to the report of the four commissioners. If these two extracts had any evidential value, they should have been brought to the attention of the commissioners while they were engaged in ascertaining the damages to be awarded. Indeed, the second of these extracts is but a statement of what the circuit court had by its order required the commissioners to do—ascertain the damages resulting from a grade crossing, and if a change of the railroad yard of the Norfolk and Western was a necessary result of the grade crossing, the extra expense incident thereto would have been embraced in the order under which the commissioners acted, to ascertain the proper compensation for damages, including the easement of crossing, suffered by the Norfolk and Western Railway Company.

We find nothing in the action of the court, as set forth in this bill of exception, to justify our departure from the general rule governing the judgments of courts which confirm the report of commissioners to ascertain damages.

Upon the whole case we find no error in the judgment of the circuit court, which is affirmed.

*Affirmed.*