## Richmond

ARTHUR ARNOLD DILLON, ET AL. v. F. A. DAVIS, COMMISSIONER, ETC.

W. T. HARRISON, ET AL. v. F. A. DAVIS, COMMISSIONER, ETC.

January 18, 1960.

Record Nos. 5017, 5018.

Present, All the Justices.

The opinion states the case.

*Thomas Keister Greer*, for the plaintiffs in error.

*A. S. Harrison, Jr., Attorney General; Francis C. Lee, Assistant*

*Attorney General; M. Ray Johnston, Assistant Attorney General,* for the defendant in error.

Cases submitted on briefs.

I'ANSON, J., delivered the opinion of the court.

These are separate appeals in two eminent domain proceedings instituted by F. A. Davis, State highway commissioner, hereinafter referred to as the appellee, under title 33, chapter 1, article 5, Code of 1950, as amended, 1953 Replacement Volume, to condemn for highway purposes the lands of A. A. Dillon and Vera D. Dillon (Record No. 5017) and W. T. Harrison and Lillie M. Harrison (Record No. 5018), sometimes hereinafter referred to as the appellants. The cases were heard separately by the same commissioners, appellants' exceptions to their reports were overruled and the awards confirmed by the trial court. The Dillons were awarded $15,000.00 for the land taken and $1,850.00 for damages to the residue, a total of $16,850.00, and the Harrisons $22,500.00 for the land taken. The principal assignments of error are the same in each case and they will be considered together.

The appellants contend that the trial court erred:

(1) In overruling their motions to dismiss the cases for lack of jurisdiction because: (a) the petitions did not contain adequate descriptions of the lands to be taken, (b) maps of the lands to be taken were not filed with the petitions, (c) there were no allegations in the petitions that bona fide, but ineffectual, efforts had been made to purchase the lands as required by § 25-7, Code of 1950, and the manner of such compliance required by § 25-8, Code of 1950, and (d) in the Dillon case (Record No. 5017) no plat was filed with the petitions showing the land not taken but likely to be damaged by the taking;

(2) In holding that a commission of four acting commissioners was valid; and

(3) In not discharging the commission because one of the commissioners was asleep while their evidence was being presented.

The petitions in each case were filed on May 16, 1958. Similar language was used in each petition to describe the lands taken. The description in the Dillion case is as follows:

"* * * [T]o acquire in fee simple a strip or parcel of land * * * as shown by lines on a blue print map of a portion of said highway,

identified as sheets Nos. 4A, 4C, 4D and 4E, Project No. 7220-033-032, on file in the Office of the Department of Highways, Richmond, Virginia, a copy of which blue print map was attached to the certificate hereinafter referred to and recorded simultaneously therewith in the State Highway Plat Book among the land records of Franklin County, Virginia.

"* * * [I]t is requisite and suitable that the said strip of real property through the said property * * * be of the width and on the grades as shown on the said blue print map hereinabove referred to and outlined in red on said map; * * * more particularly known and described as follows:

"Being as shown on plans approved October 16, 1957, and lying on the northwest (left) side of the survey centerline and adjacent to the northwest right of way line of existing Route 220 from the lands of Howard E. Dalton opposite approximate Station 1101 plus 60 to the lands of Raymond Tyree opposite approximate Station 1105 plus 57 and containing 0.78 acre, more or less land." An accompanying easement is likewise described.

The petition further states that the certificate referred to in the above description was filed in the clerk's office of Franklin county on May 8, 1958. It was issued by the State highway commissioner and countersigned by the State treasurer, with a statement that the sum of $15,325.50, or so much thereof as may be directed by the court, would be paid to the owner or other persons interested therein, pursuant to title 33, chapter 1, article 5, Code of 1950, as amended.

The land taken in the Harrison case was 2.15 acres, more or less, and the certificate of deposit recorded in the clerk's office was for $19,605.00.

The petitions also alleged that the appellee had attempted to purchase the lands from the appellants before the institution of the proceedings but had not been successful because they had been unable to agree on the amount of compensation and damages.

On May 20, 1958, the appellants petitioned the court for orders directing that 90 percent of the amounts deposited to their respective credit, by the certificates heretofore referred to, be paid to them. By orders entered on June 12, 1958, the prayers of the appellants' petitions were granted and payments were made in accordance with § 33-74,[1] Code of 1950, 1953 Replacement Volume.

---

[1] § 33-74 was repealed by Acts of Assembly, 1958, ch. 581, p. 875, and new sections enacted.

The appellants filed their answers on May 28, 1958, admitting that ineffectual efforts had been made by the highway department to purchase their lands, requesting the court to require the appellee to file with the petitions copies of the maps showing the lands taken, and asking for the appointment of commissioners to ascertain the value of their lands and damages, if any, to the residue, after the requested maps had been filed. The maps requested were filed by leave of court on a later date.

On June 12, 1958, five freeholders were selected from a list of seven to serve as commissioners to ascertain the value of the lands taken and damages, if any, to the residue. They were directed to appear on July 23, 1958, but the matters were continued to a later date on account of the death of appellants' counsel.

On August 25, 1958, the appellants moved to dismiss the appellee's petitions on the grounds that the court lacked jurisdiction to hear the matters because the appellee had not set out in the petitions adequate descriptions of the lands taken; that a map of the lands taken had not been filed with the petitions; and that there were no allegations in the petitions that bona fide, but ineffectual, efforts had been made to purchase the lands before the institution of the suits, and the manner in which the statutory requirement had been complied with.

The court, after hearing evidence, in accordance with the rule laid down in *Charles* v. *Big Sandy, etc., R. Co.*, 142 Va. 512, 516, 129 S. E. 384, 385, overruled the appellants' motions to dismiss the petitions, but ordered the appellee to file the plans for the construction of the highway, which were referred to in the description of the lands set out in the petitions.

Section 33-60, Code of 1950, 1953 Replacement Volume, dealing with the procedure for condemnation of property by the highway department, reads in part as follows:

"* * * The petition shall set forth with reasonable particularity a description and designation of the interest, rights and property intended to be taken * * * and such other facts, if any, as may be deemed necessary by the Commissioner to give full information to the court and all other persons in interest * * *."

In *N. & W. R. Co.* v. *Virginian R. Co.*, 110 Va. 631, 633, 634, 639-642, 647, 66 S. E. 863, 864-866, 868, this court held that a description of lands to be taken in a condemnation proceeding, similar to that set out in the appellee's petitions, which referred to certain

plans, etc., filed as an exhibit with the petition, was sufficient to make the description certain.

While maps of the lands taken were not filed with the petitions, reference was made in each petition to the map filed and recorded in the land records of the clerk's office on May 8, 1958, for a more particular description. Reference was also made in the petitions to the plans for the construction of the highway, copies of which were ordered filed in the proceedings.

It is well settled that where a recorded map, plan or survey is referred to for a description of land, the effect is the same as if it were copied in the instrument itself. *Richardson* v. *Hoskins Lumber Co.*, 111 Va. 755, 757, 69 S. E. 935, 936; *Mathews* v. *Gillespie*, 137 Va. 639, 648, 120 S. E. 324, 327.

A summation of the applicable principles is well stated in 29 C. J. S., Eminent Domain, § 259 d., p. 1231:

"Although the description in the petition of the property sought to be condemned, or of the location, route, and termini of the improvement, may in itself be insufficient, it may be made sufficient by reference to other documents, such as maps, plats, surveys, deeds, and the like, unless such maps, etc., are insufficient in themselves, to aid or render certain the description given in the petition. * * *"

See also *State, ex rel. Adams* v. *Hann*, (Mo.) 30 S. W. 2d 15, 18; *Rand, et al.* v. *Mississippi State Highway Commission*, 191 Miss. 230, 199 So. 374.

The appellants were obviously aware of what lands were being taken by the highway commissioner, since they petitioned the court for the payment of 90 percent of the funds deposited to their credit, which certificates of deposit were attached to the maps of lands taken and recorded in the clerk's office of Franklin county.

We agree with the trial court's ruling that the lands taken were described with reasonable particularity and certainty, and that all necessary maps, plans and surveys were referred to in the petitions and properly filed.

There is no merit in the contention that the petitions did not contain allegations that "a bona fide" effort had been made in each case to purchase the lands taken, and the manner of compliance required by § 25-8. The language in the petitions clearly shows that an effort had been made to purchase the lands taken in each case before the proceedings were filed. Indeed, the appellants admitted the allegations in their answers. Moreover, certificates dated May 8, 1958,

signed by a representative of the highway commission, setting out that "a bona fide" effort had been made to purchase the lands, were filed in each case.

While it is true that the allegations were not in the exact language of § 25-7, Code of 1950, an averment in a petition to condemn land for public use need not be in the exact language of the statute if it affirmatively appears that the petitioner has been unable to agree with the owner in respect to the compensation to be paid. *St. Louis & C. R. Co.* v. *Postal Telegraph Co. of Illinois,* 173 Ill. 508, 51 N. E. 382, 385; 18 Am. Jur., Eminent Domain, § 324, p. 968.

There is no merit in the appellants' contention in the Dillon case (Record No. 5017) that a map was not filed showing a description of the lands not taken, but likely to be damaged. This point was not raised until September 3, 1958, the day on which the evidence was heard, and a map showing a more detailed description of the lands was introduced in evidence without objection.

The crucial point in these appeals is raised by the appellants' second assignment of error.

Section 33-63, Code of 1950, 1953 Replacement Volume, deals with the selection of commissioners in highway condemnation cases to fix compensation for lands taken and damages, if any, to the residue, and reads as follows:

"After the filing of the grounds of defense, or after the time for filing the same has expired, the court, or the judge thereof in vacation, shall, upon motion of either the petitioner or the landowner, summon either seven or five freeholders, who shall be residents of the county wherein the land or the greater part thereof to be condemned is situated. In the event seven are summoned, the petitioner and the landowner shall each have one peremptory challenge and the remaining five, or the original five if only five have been summoned, any three of whom may act, shall fix the value of the land taken and the damages, if any, which may accrue to the residue."

It is well established that statutes conferring the power of eminent domain are to be strictly construed against the grant and the authority conferred by such statutes must be exercised in the manner provided by law. *West* v. *Anderson,* 186 Va. 554, 561, 42 S. E. 2d 876, 879; *Richmond* v. *Childrey,* 127 Va. 261, 267, 103 S. E. 630, 631; 6 Mich. Jur., Eminent Domain, § 7, pp. 693, 694.

When the five freeholders, who had been selected from a list of seven, appeared on September 3, 1958, and before they had been

sworn, the court sustained an objection of counsel for appellants to one of them serving as a commissioner on the ground that he was not disinterested. Over the objection of the appellants, the four remaining freeholders were sworn as commissioners. They viewed the lands in the presence of the trial judge, heard evidence, and returned unanimous reports awarding compensation for the lands taken in both cases, and damages to the residue in the Dillon case (No. 5017), which report was later confirmed by the court.

Section 33-63 provides for the selection of five commissioners to fix the value of the lands taken and damages to the residue, if- any, and while any three of five may act, the plain language of the statute requires that the "remaining five, or the original five, if only five have been summoned," shall compose the commission. The commission in each case consisted of only four. Moreover, the statute permits three of five to act, but it does not say *three or more* may act. It may well be considered that the legislature had a reason for making the number uneven.

The appellee argues that a commission of four acting commissioners is valid under § 33-63. He relies on the language of § 1-13.1, Code of 1950, as amended, which reads as follows:

"Words purporting to give authority to three or more public officers or other persons, shall be construed as giving such authority to a majority of such officers or other persons, unless it is otherwise expressly declared in the law giving authority."

Section 1-13.1 is a rule of construction which only confers power on a majority of a *valid* commission when acting pursuant to their authority. See *N. & W. R. Co.* v. *Virginian R. Co., supra,* (110 Va. at p. 647, 66 S. E. at p. 868). Section 1-13.1 does not eliminate the necessity of the appointment of a commission of five, any three of whom may act, which is expressly required by § 33-63.

The appellee further argues that since §§ 25-12[2] and 25-27,[3] Code of 1950, under the general condemnation statutes, are similar to § 33-63, § 25-27 gives an insight into the meaning of the phrase in

[2] "§ 25-12. * * * [T]he judge * * * shall appoint five disinterested freeholders, * * * any *three or more* of whom may act * * *." (Italics supplied.)
[3] "§ 25-27. * * * Instead of having commissioners appointed in each separate case in the manner prescribed by §§ 25-10 to 25-15, any such company may apply to the circuit court of any county, or the judge thereof in vacation, which shall * * * appoint five disinterested freeholders, who, or any *three or more* of whom, shall constitute a board to ascertain a just compensation to the owners of the several tracts of land * * *." (Italics supplied.)

§ 33-63, "any three of whom may act," and is illustrative of the practice of the courts of this State to send commissions of less than five members to view property in eminent domain proceedings.

This argument is without merit. The proceedings in these cases were instituted under the special eminent domain statutes (title 33, chapter 1, article 5, Code of 1950, as amended) dealing with condemnation of property by the State highway commissioner. Section 33-63 completely provides for the appointment of commissioners in highway condemnation cases and is controlling.

We are of opinion that a commission of four acting commissioners is not valid under § 33-63.

It will not be necessary for us to deal with the appellants' third assignment of error, since, from what has been said, the cases will have to be reversed and remanded, and it is unlikely that the trial court will again be confronted with an objection that one of the newly appointed commissioners was asleep while evidence was being taken.

The judgment in each case, Records Nos. 5017 and 5018, is reversed and the cases are remanded.

*Reversed and remanded.*