**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 12-1740**

———————

AGAPE MOTORCOACH RETREAT, LLC; STEPHEN J. GREGSON, Trustee;
DEBRA E. GREGSON, Trustee,

        Plaintiffs - Appellants,

        v.

GLENDA BRINTLE, Trustees of the Thomas Y. Brintle 2006
Revocable Trust; THOMAS ALLEN BRINTLE, Trustees of the
Thomas Y. Brintle 2006 Revocable Trust; KAREN B. CARTER,
Trustees of the Thomas Y. Brintle 2006 Revocable Trust;
DAVID VELA, Regional Director for the National Park Service;
UNITED STATES OF AMERICA; TIMOTHY BRITT BOLEN,

        Defendants - Appellees.

———————

Appeal from the United States District Court for the Western
District of Virginia, at Roanoke.  James C. Turk, Senior
District Judge.  (7:10-cv-00369-JCT)

———————

Argued: March 20, 2013        Decided: April 25, 2013

———————

Before NIEMEYER, MOTZ, and KEENAN, Circuit Judges.

———————

Affirmed by unpublished opinion.  Judge Keenan wrote the
opinion, in which Judge Niemeyer and Judge Motz joined.

———————

**ARGUED:** Wells Huntington Byrnes, Sr., CLEMENT & WHEATLEY,
Danville, Virginia, for Appellants.  Thomas Linn Eckert, OFFICE
OF THE UNITED STATES ATTORNEY, Roanoke, Virginia; Alan Kent
Caudell, Galax, Virginia, for Appellees.  **ON BRIEF:** Timothy J.

Heaphy, United States Attorney, Roanoke, Virginia, for Appellees
United States of America and David Vela.

———————————

Unpublished opinions are not binding precedent in this circuit.

BARBARA MILANO KEENAN, Circuit Judge:

In this appeal, we consider the district court's summary judgment holding that the plaintiff, Agape Motorcoach Retreat, LLC (Agape), does not have an easement across certain real property owned by the defendants. In its complaint, Agape argues primarily that it has an easement across property acquired in 1938 by the Commonwealth of Virginia under its power of eminent domain, which the Commonwealth conveyed to the United States government for construction of the Blue Ridge Parkway. Upon our review of Agape's arguments, we conclude that the district court did not err in awarding summary judgment in favor of the defendants, because the Commonwealth acquired by condemnation the entirety of the property at issue without reservation of the alleged easement.

I.

A.

Agape owns a tract of about 20 acres (the Agape parcel) in Carroll County, Virginia. On the eastern and southeastern borders of the Agape parcel is a tract of land (the Brintle parcel) owned by representatives of Thomas Y. Brintle's estate (collectively, Brintle).[1] Joining the southern boundary of the

_____

[1] The Brintle defendants include Glenda R. Brintle, Thomas
(Continued)

Agape parcel is a tract of land (the Bolen parcel) owned by Timothy Britt Bolen (Bolen).  On the southern and southeastern borders of the Brintle parcel and the Bolen parcel lies the Blue Ridge Parkway (the Parkway)[2] and adjacent land owned by the federal government.  Persons seeking direct access between the Agape parcel and the Parkway must cross land owned by either Bolen or Brintle, in addition to land owned by the federal government.

The Agape parcel, the Bolen parcel, the Brintle parcel, and the land at issue owned by the federal government, were originally part of a larger tract of land owned by Marcus and Myrtle Bolen (the Bolens).[3]  In October 1937, the State Highway Commissioner of Virginia (the Highway Commissioner) notified the Bolens that the Commonwealth sought to acquire two parcels of their property, totaling about 25 acres, for purposes of the federal government's construction of a segment of the Parkway.

---

Allen Brintle, and Karen B. Carter, each of whom are trustees of the Thomas Y. Brintle 2006 Revocable Trust.

[2] The Blue Ridge Parkway is a federal highway that connects the Great Smoky Mountains National Park with the Shenandoah National Park.  See H.R. Con. Res. 294, 111th Cong. (2d Sess. 2010) (commemorating the 75th anniversary of the Blue Ridge Parkway).

[3] The remaining portions of this larger tract of land were divided by deed in 1950 to the predecessors-in-title of Bolen, Brintle, and Agape, respectively.

The Commonwealth sought to acquire the land in fee simple, and the Highway Commissioner's notice stated that the land would be acquired

> [t]ogether with all right and interest of the said M. M. Bolen, Myrtle F. Bolen or others, their heirs or assigns, to build, construct, maintain or use any private drive or road on or over the above described tracts or parcels (Parcel No. 1 and Parcel No. 2), or other Parkway lands, without the consent and approval of the State Highway Commissioner of Virginia or his assigns.

The Highway Commissioner was unable to reach an agreement with the Bolens concerning compensation for the two parcels, and thereafter filed a petition (the condemnation petition) in the Carroll County Circuit Court (the circuit court) to condemn that property. The Highway Commissioner stated in the condemnation petition that:

> [T]he property and rights intended to be taken by these proceedings is the fee simple title to the strips or parcels of the defendants hereinabove described, to-gether with all their right to access roads, ways or drives over the above de-scribed tracts or parcels of land, without the consent and approval of the State Highway Commissioner or its assigns.

(Emphasis added).

The circuit court appointed five commissioners to determine the value of the property described in the condemnation petition. As related in their report, the commissioners "went upon and viewed the lands described in the petition." (Emphasis added). The commissioners concluded that $1,260 would be "just

5

compensation for the fee simple title to the said lands described in the petition filed in said case," and that $140 would be an appropriate award "for the damage done to the adjacent property of the owner" of that land. (Emphasis added). Accordingly, the Commonwealth deposited $1,400 with the clerk of the circuit court, representing the total valuation of the land and the damage to the residue, as determined by the commissioners.

The Bolens filed exceptions to the commissioners' report, in which they contended that the commissioners' valuation of the land was "unfair, unjust, inadequate, and unreasonable." However, the Bolens did not claim entitlement to an easement across the property described in the condemnation petition.

After reviewing the Bolens' exceptions, the circuit court appointed a second set of commissioners to determine the value of the property subject to the condemnation petition. This second set of commissioners also viewed "the lands described in the petition," and concluded that $1,750 would be "just compensation for the fee simple title to the said lands described in the petition," and further determined that $575 would be an appropriate award for the damage to the residue. (Emphasis added). The Bolens did not file exceptions to this second commissioners' report.

6

Thereafter, the Commonwealth deposited $925 with the clerk of the circuit court, the amount representing the increased compensation due to the Bolens as determined in the second commissioners' report. On May 26, 1938, the clerk of the circuit court deposited into the Bolens' bank account the total amount of $2,325 paid by the Commonwealth.

Upon reviewing the second commissioners' report, the circuit court entered an order (the circuit court's order), stating that the court would "approve, ratify and affirm" that report "in all respects." The order "confirm[ed]" to the Commonwealth the "fee simple title" to property described in the condemnation petition, "free of all liens and encumberances [sic]."

The circuit court's order also contained a verbatim description of the two parcels acquired by the Commonwealth from the Bolens, which included the following language:

> Together with all right and interest of the said M. M. Bolen, and Myrtle F. Bolen or others, their heirs or assigns, to build, construct, maintain or use any private drive or road on or over the above described tracts or parcels (Parcel No. 1 and Parcel No. 2), or other Parkway lands, without the approval and consent of the State Highway Commissioner of Virginia or his assigns.

In the margin of the court's order was a handwritten, undated, anonymous notation. This notation, which was connected

7

by a handwritten "arrow" drawn from the above typewritten property description, contained the following language:

> except one (1) access road way ten (10) feet wide with two (2) foot shoulders on the side at or near Station 358[.]

Agape's present claim of entitlement to an easement across land owned by the federal government is based on the above handwritten notation.[4]

The property described in the condemnation petition later was conveyed by general warranty deed from the Commonwealth to the federal government.[5] That deed also conveyed additional parcels of land owned or acquired by the Commonwealth. In the deed, the Commonwealth reserved several easements to and across the Parkway, but the easement claimed by Agape in this proceeding was not among them. Several predecessors in the Agape, Brintle, and Bolen chains of title enjoyed access across the conveyed lands, but that access was obtained from the federal government through special use permits. The most recent such special use permit lapsed in June 1996.

---

[4] The circuit court's order was entered into the Chancery Order Book and the Deed Book, including the unsigned, undated, handwritten notation appearing in the margin of the court's order. The court's order, the Order Book, and the Deed Book are the only three documents describing Agape's alleged easement providing access to the Parkway.

[5] The deed was drafted in May 1938, and was affixed with a notary's seal on June 16, 1938.

B.

Agape filed its complaint under the Quiet Title Act, 28 U.S.C. 2409a[6] against Brintle, Bolen, and the United States (collectively, the defendants), seeking a declaration that Agape has easements across the respective lands owned by the defendants. Upon completion of discovery, the parties filed cross-motions for summary judgment.

The district court granted the defendants' motions for summary judgment, and denied Agape's motion. The court focused its analysis on the federal government's property, observing that under Virginia law, easements over the Brintle and Bolen parcels would be extinguished absent an easement across the government's land allowing access to the Parkway from the Agape parcel.

Applying provisions of the Code of Virginia of 1930, the district court held that the Commonwealth acquired defeasible title to the subject property upon paying the amount of compensation recommended in the second commissioners' report, and that the circuit court lacked authority under Virginia law to modify the description of the property set forth in the

---

[6] The Quiet Title Act is "the exclusive means by which adverse claimants [may] challenge the United States' title to real property." Block v. North Dakota ex rel. Bd. of Univ. & School Lands, 461 U.S. 273, 286 (1983).

condemnation petition. The district court therefore concluded that because the property described in the condemnation petition did not include the easement claimed by Agape, the Commonwealth obtained title to the property free of an easement reserved to the Bolens. The district court held that, accordingly, the federal government acquired fee simple title to the property described in the condemnation petition, without the claimed easement, when the Commonwealth conveyed the land to the federal government by general warranty deed.

After rejecting Agape's claim of an easement across the federal property, the district court did not address the issue whether Agape otherwise would have had easements across the Bolen parcel and the Brintle parcel. The district court entered an order awarding judgment in the defendants' favor, and Agape timely filed a notice of appeal.

II.

We review de novo the district court's award of summary judgment in favor of the defendants, viewing the facts, and all reasonable inferences that may be drawn from those facts, in the light most favorable to the plaintiff. See Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011); S.C. Green Party v. S.C. State Election Comm'n, 612 F.3d 752, 755 (4th Cir. 2010). Summary judgment is appropriate only when "there is no genuine

10

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 295 (4th Cir. 2010).

A.

In the present case, Agape contends that the district court erred in concluding that Agape did not obtain an easement by express reservation. Restating its arguments presented to the district court, Agape primarily relies on the handwritten notation in the margin of the circuit court's order to establish that the order expressly reserved the claimed easement to the Bolens and their successors in title. Agape also asserts that the district court's decision constituted an impermissible collateral attack on the circuit court's 1938 order. Finally, Agape maintains that it has easements across the Brintle parcel and the Bolen parcel that are independent from property owned by the federal government. We disagree with Agape's arguments.

A party claiming an easement bears the burden of establishing entitlement to the easement claimed. Mulford v. Walnut Hill Farm Grp., LLC, 712 S.E.2d 468, 476 (Va. 2011). An easement may exist as a result of an "express grant or reservation, by implication, or by other means." Id. (quoting Brown v. Haley, 355 S.E.2d 563, 568 (Va. 1987)).

11

We first consider Agape's primary argument that it has an express easement over land owned by the federal government.[7] Agape's argument rests on the premise that the circuit court could alter the property description contained in the condemnation petition.

In view of this contention, we begin our analysis by emphasizing the fundamental principle that a sovereign has absolute power to acquire private property required for a public purpose, provided that just compensation is paid. See Georgia v. City of Chattanooga, 264 U.S. 472, 480 (1924); see also Secombe v. Milwaukee & St. Paul R.R. Co., 90 U.S. 108, 118 (1874) ("there is no limitation" upon the power of the sovereign to take private property for public use if just compensation is paid to the former owner). Accordingly, as the Supreme Court of Virginia has stated, "[w]henever the public use of property requires it, the private rights of property must yield to this

---

[7] We observe that the district court appropriately focused its analysis on Agape's claim of an easement across the federal government's land. Under Virginia law, a person claiming an easement of ingress or egress over several parcels of land must demonstrate a right of access allowing that person to reach his or her ultimate destination. See Atkisson v. Wexford Assocs., 493 S.E.2d 524, 528 (Va. 1997) (when any lot owner shows that an express easement did not transverse his property, the claimed easement fails because it would stop short of its ultimate destination), abrogated on other grounds by Michael E. Siska Revocable Trust v. Milestone Dev., LLC, 715 S.E.2d 21 (Va. 2011).

12

paramount right of sovereign power to take it for the public use." Fallsburg Power & Mfg. Co. v. Alexander, 43 S.E. 194, 196 (Va. 1903).

With this "paramount right" in mind, we turn to examine the provisions of the Code of Virginia of 1930 that are at issue in this case. Under former Virginia Code Section 1969j, the State Highway Commissioner was assigned the power of eminent domain. See Stewart v. Fugate, 187 S.E.2d 156, 159 (Va. 1972) (citing Va. Code § 33.1-89, the analogous statute currently in effect, and noting that this section assigns the power of eminent domain for purposes of highway construction to the Virginia State Highway Commissioner). Former Section 1969j required that the Highway Commissioner file a condemnation petition in the circuit court setting forth "with reasonable particularity a description and designation of the interests, right and property intended to be taken." Former Va. Code § 1969j; see also Dillon v. Davis, 112 S.E.2d 137, 140 (Va. 1960) (discussing provision of the Code of Virginia of 1950 requiring that the condemnation petition must describe the property to be taken with sufficient certainty). Former Section 1969j further authorized the appointment of commissioners to determine the value of the land to be taken, and, in particular, stated that:

> [u]pon the return of the report of the commissioners
> or viewers appointed in such proceedings the sum
> ascertained thereby as compensation and damages, if

13

any, to the property owners, may be paid to the person or persons entitled thereto, or for them into court or to the clerk thereof, <u>upon which title to the property and rights condemned shall vest in the Commonwealth of Virginia in fee simple</u>, or to such extent as may be prayed for in [the] petition.

Id. (emphasis added); see also Prichard v. State Highway Comm'r, 188 S.E. 166, 220-21 (Va. 1936) (quoting Former Section 1969j).

Under this statutory framework, the Commonwealth's acquisition of title was subject to a limited right of appeal by the property owner or the Commonwealth "on the question only of damages or compensation." Former Va. Code § 1969j; see also State Highway Comm'r v. Kreger, 105 S.E. 217, 224 (Va. 1920) (noting limited nature of the right of appeal). Thus, by operation of former Section 1969j, the Commonwealth acquired defeasible title to the property at issue at the time that the Commonwealth remitted payment to the circuit court in the amount first determined by the commissioners.

The Commonwealth, however, did not acquire indefeasible title to the property until the circuit court entered an order confirming the second commissioners' report. Under former Section 4369, "[u]pon such payment [of the sum determined to be just compensation by the commissioners], either to the person entitled thereto, or into court, <u>and confirmation of the report</u>, the title to the part of the land and to the other property taken for which such compensation is allowed, <u>shall be</u>

14

absolutely vested [in the Commonwealth]." (Emphasis added). We thus agree with the district court's conclusion that under former Section 1969j, title to the property vested in the Commonwealth as soon as compensation was paid to the clerk of the circuit court, but that the title only became "absolutely vested" or indefeasible upon the circuit court's confirmation of the commissioners' report.[8]

We find no merit in Agape's contention that the circuit court was free to modify the extent of the property taken before indefeasible title vested in the Commonwealth. This contention finds no support in Virginia's condemnation statutes, and wholly contravenes the statutory scheme for condemnation proceedings established by the Virginia General Assembly.

Under the condemnation statutes in effect in 1938, it was the Commonwealth's right to take the property described in the condemnation petition, and the circuit court's role was limited merely to confirming the taking and to approving or denying the amount of compensation set by the commissioners.[9] See Former Va.

---

[8] The government argues that the Commonwealth acquired indefeasible fee simple title when it deposited with the circuit court the sum established by the commissioners. We find no merit in this argument, because it would render a nullity the language in former Section 4369 concerning "confirmation of the report."

[9] Condemnation proceedings in the Commonwealth are conducted in a similar, although not identical, manner today as such
(Continued)

15

Code §§ 1969j, 4369.  This narrow role of a circuit court in condemnation proceedings long has been emphasized by the Supreme Court of Virginia in its decisions discussing the near-conclusiveness of the commissioners' recommendations.  See Brown v. May, 117 S.E.2d 101, 106-07 (Va. 1960) (holding that the report of the condemnation commissioners "is not to be disturbed by the trial court" unless the report is based on erroneous principles or includes a compensation award that is grossly inadequate or excessive such as to evidence bias, prejudice, or corruption); Richmond Traction Co. v. Murphy, 34 S.E. 982, 984 (Va. 1900) (holding that if the commissioners' report does not appear to be illegal or irregular on its face, the report "must be affirmed and carried into effect" by the circuit court).

---

proceedings were conducted in the 1930s.  Under the current statutory framework, as consistent with the applicable law in 1938, "[t]he report of the body determining just compensation may be confirmed or set aside forthwith by the court."  Va. Code § 25.1-233 (2011).  The court's powers to set aside the report are generally confined to instances of "fraud, collusion, corruption or improper conduct" in connection with the report. See id. ("If the court be satisfied that no such fraud, collusion, corruption or improper conduct entered into the report of the body determining just compensation . . . the report shall be confirmed."); see also id. (court not required to confirm report if "other cause exists that would justify setting aside or modifying a jury verdict in civil actions"); State Highway Comm'r v. Carter, 222 S.E.2d 776, 777-78 (Va. 1976) (trial court should set aside commissioners' award if it "bear[s] no reasonable relation" to the evidence or shows prejudice or corruption on the part of the commissioners).

16

Pursuant to former Section 4364, in a condemnation proceeding, "[t]here shall be filed with such [condemnation] petition a plat of the survey, with a profile showing the cuts and fills, trestles and bridges, and a description of the land or other property which, or an interest or estate in which, is sought to be condemned." Further, former Section 4368 delineated the commissioners' duty to value the land, stating that "[t]he commissioners, after viewing the property and land which, or an interest or estate in which, is sought to be condemned . . . shall ascertain what will be a just compensation for the said property and land, or for such interest or estate therein as is proposed to be taken." (Emphasis added); see also Va. Elec. & Power Co. v. Patterson, 132 S.E.2d 436, 439 (Va. 1963) (citing Section 25-17 of the Code of Virginia of 1950 for the proposition that the commissioners determine just compensation for property "proposed to be taken").

In view of this statutory framework, the value set by the commissioners in their report was dependent on the description of the property set forth in the condemnation petition. Thus, any purported reduction by the circuit court of the estate taken necessarily would have affected the commissioners' valuation of the property. Under such circumstances, the court's purported modification of the estate taken, and "confirmation" of the commissioners' valuation of the property described in the

17

condemnation petition, would have effected an unauthorized de novo valuation by the circuit court, a result not contemplated by the statutory scheme. Accordingly, upon our consideration of Virginia law in effect in 1938, we hold that the title that vested in the Commonwealth was determined by the description of the property in the condemnation petition, which did not include the alleged easement claimed by Agape.

Our conclusion is not altered by Agape's argument that the district court's decision constituted an impermissible collateral attack on the circuit court's 1938 order. A collateral attack on a judgment is "an attempt to impeach the judgment by matters [outside] the record . . . to avoid, defeat, or evade it or deny its force and effect, in some incidental proceeding not provided by law for the purpose of attacking it." Guinness, PLC v. Ward, 955 F.2d 875, 895 (4th Cir. 1992) (citation omitted); see also Matthews v. Matthews, 675 S.E.2d 157, 159 (Va. 2009) ("A collateral attack is an attempt to impeach a judgment in a proceeding not instituted for the purpose of annulling or reviewing that judgment.") (citation omitted).

The district court's decision did not constitute a collateral attack on the circuit court's judgment because, on the face of the order and as provided by the Virginia Code, the circuit court's order confirmed condemnation of the property

18

described in the Commonwealth's petition and the property's value as set by the second set of commissioners. Thus, the district court's decision, and our agreement with that decision, does not "avoid, defeat, or evade" the circuit court's order, Guinness, 955 F.2d at 895, but rather constitutes an examination of the scope of that order.

B.

Having concluded that Agape does not have an easement across the land owned by the federal government, we next consider whether the district court erred in dismissing Agape's claim with respect to the easements claimed over lands owned by Brintle and Bolen. As an initial matter, we agree with the district court's conclusion that because Agape cannot establish an express easement extending from its property to the Parkway, any otherwise existing easements over intervening properties on that claimed route are extinguished. Atkisson v. Wexford Assocs., 493 S.E.2d 524, 528 (Va. 1997), abrogated on other grounds by Michael E. Siska Revocable Trust v. Milestone Dev., LLC, 715 S.E.2d 21 (Va. 2011).

For the first time on appeal, however, Agape claims a separate easement route across Brintle's and Bolen's properties that is not dependent upon an easement across the federal land. We do not consider this new claim, because Agape's amended complaint alleged an easement across the Brintle and Bolen

19

properties that "required adjudication" of Agape's right to cross property owned by the federal government.[10] Moreover, the alternate route now claimed by Agape was not presented to the district court for its consideration. Therefore, because Agape did not allege in the district court an alternate route across the Brintle and Bolen parcels that does not cross federal property, we will not consider Agape's purported alternate route for the first time on appeal. See Helton v. AT&T Inc., 709 F.3d 343, 360 (4th Cir. 2013) (issues raised for first time on appeal generally will not be considered).

### III.

In sum, we hold that the district court did not err in concluding that the Commonwealth acquired all the property described in the condemnation petition, without reservation of the alleged easement, because the description of the property in the petition and in the commissioners' report did not reference such an easement. We further hold that the district court's decision, and our construction of the circuit court's 1938

---

[10] We further observe that Agape does not address in its reply brief Brintle and Bolen's assertion that the alternate route now claimed on appeal was not raised in the district court.

20

order, does not constitute a collateral attack on that order. Accordingly, we affirm the district court's judgment.

AFFIRMED